SALM, ADM'X, *et al.* v. ISRAEL BROS.

1. Sale : PRICE TO BE PAID : CONSTRUCTION OF CONTRACT. Defendants, having bought a stock of goods at sixty-five per cent. of their invoiced price, sold a portion of them to plaintiffs, under an agreement that they should be invoiced to plaintiffs "at the invoiced price that first parties (defendants) purchased same for." *Held* that this meant the price which defendants paid for the goods, and not the invoiced price of which they paid only sixty-five per cent.

2. ———— : FALSE REPRESENTATIONS : REMEDY. Defendants, having agreed to sell a stock of goods at cost to defendants, and to take city lots in exchange, fraudulently invoiced the goods to plaintiffs much in excess of their cost, and took conveyances of enough of lots at agreed prices to cover the aggregate value of the goods estimated upon the false invoice. *Held* that plaintiffs were entitled to a recovery for the difference between the real cost and that shown by the false invoice, and were not limited to an action to recover enough of the real estate to equal that difference.

*Appeal from Polk District Court.*

FILED, MARCH 12, 1888.

ACTION to recover seventeen hundred and sixty-eight dollars alleged to have been paid in consequence of the fraud of defendants. A demurrer to the petition was sustained. Plaintiffs electing to stand upon their petition, the cause was dismissed by the court, at plaintiffs' cost. Plaintiffs appeal.

*Gatch, Connor & Weaver,* for appellants.

*Barcroft & Bowen,* for appellees.

ROBINSON, J.—It appears that the owners of a chattel mortgage on a stock of goods in the city of Des Moines placed the same in the hands of an agent for foreclosure. The agent took possession of the goods, invoiced them, and sold them to defendants at sixty-five per cent. of the invoice price, or for the aggregate sum of $10,062.51. After defendants had disposed of a large portion of said stock, they sold the remainder to plaintiffs. The agreement of sale was in writing. The following is a copy :

"Des Moines, Iowa, July 21, 1886.

"Article of agreement in exchange of properties, real and personal, made and entered into this day and date above written, by and between Israel Bros., parties of the first part, and Mrs. Ellen Edwards, per J. W. Jenkins, her agent, and J. B. Salm, parties of the second part, witnesseth, that first parties do hereby sell unto the second parties all the goods left remaining of the Hemphill, Hepburn & Traversy stock, excepting counters and shelving, said goods to be invoiced to second parties at the invoiced price that first parties purchased same for; second parties to take possession of goods as soon as invoiced, for said consideration; second parties to deed first parties lot six, University place, subject to fifteen hundred and fifty dollars, which first parties hereby assume ; consideration of said property being four thousand dollars, or twenty-four hundred and fifty dollars for the equity ; also deed to the first parties their choice of lots in Salm's addition, at four hundred dollars each, excepting lots one, two, twelve and thirteen, which are sold ; first parties to take the equity in lot six, University place, in part payment for above-mentioned goods, at twenty-four hundred and fifty dollars, and balance in lots, as above described, in Salm's addition, at four hundred dollars each, until above-said goods are paid for.

[ Signed ]          "ISRAEL BROS.
                 "ELLEN EDWARDS,
                 "Per J. W. JENKINS, her agent.
                 "J. B. SALM."

It is alleged by plaintiffs that the invoice made by the agent aforesaid fixed the valuation of the goods sold to them by defendants at fifty-two hundred dollars; that defendants knowingly, wilfully and falsely represented to plaintiffs that the invoice price they paid for the goods sold to plaintiffs was fifty-two hundred dollars, when in fact the invoice price paid was only thirty-four hundred and thirty-two dollars; that, by means of said representation, plaintiffs were induced to pay to defendants the entire sum of fifty-two hundred dollars, in property, according to the terms of said agreement; that plaintiffs were not aware, at the time said agreement was made, that any invoice of said goods had been made, and were ignorant of the actual price paid by defendants for the goods sold to plaintiffs, until after they had made full payment, as aforesaid; that plaintiffs believed, and relied upon, the said representations of defendants, and were deceived and misled thereby to their damage in the sum of seventeen hundred and sixty-eight dollars. Before the final order of the district court was made, the death of J. B. Salm was suggested, and the administratrix of his estate was substituted as plaintiff.

I. The assignment of errors requires us to determine the proper construction of the agreement hereinbefore set out, and especially of that portion thereof which reads as follows: "Said goods to be invoiced to second parties at the invoiced price that first parties purchased same for." The appellants contend that this clause means that plaintiffs were to pay to defendants the amount they had actually paid for the goods in controversy, while appellees insist that it means that the amount to be paid by plaintiffs was the amount at which the goods had been invoiced by the agent who sold them to defendants. The demurrer admits that plaintiffs had no knowledge that any invoice had been made when the agreement was entered into; hence the agreement does not necessarily refer to the invoice made by the agent. According to Webster, an invoice is "a written account

1. SALE : price to be paid : construction of contract.

of the particulars of merchandise shipped or sent to a purchaser, consignee, factor, etc., with the value or prices and charges annexed." An "invoiced price," then, as applied to the facts in this case, would be presumed to be the price charged the defendants by the seller, and shown in the written account or bill of items furnished to defendants. In the absence of knowledge to the contrary, plaintiffs would have been justified in assuming that an invoice would show the price actually paid, and not a fictitious one. But the words used in the same clause, it seems to us, place the intent of the parties beyond doubt. Plaintiffs were to pay "the invoiced price that first parties purchased same for." The inference to be drawn from this language is that the invoiced price was the purchase price actually paid by defendants for the goods in question. Otherwise the words, "that first parties purchased same for," would be without natural force or effect.

II. It is said that the agreement was designed to effect an exchange of properties, and that, if the construction contended for by appellants is given, an injustice will be done the appellees, because cash prices were not adopted in the agreement, and cash was not paid; that if defendants obtained a conveyance of lots by fraud, the lots are still, in equity, the lots of plaintiffs; and that, if that be the case, an action to compel the reconveyance of the lots conveyed in excess of the contract price would afford the relief to which the plaintiffs are entitled. The agreement fixed the price to be paid by plaintiffs at that paid by defendants for the same goods. This was not unreasonable, in view of the fact that the goods were the remnants of a stock which had been purchased at foreclosure sale. The prices of the goods, and of the several parcels of real estate, were fixed in the agreement. If defendants have obtained an undue advantage by reason of fraudulent representations, they are not entitled to relief on the ground that the prices named in the agreement were not fair ones. In that

2. ——: false representations: remedy.

event their present difficulty is the result of their own wrong, and they are not entitled to relief.

III.    Other questions discussed by counsel, in view of the construction we place upon the agreement, are immaterial, or are not properly raised by the demurrer and assignment of errors.

REVERSED.

SEEVERS, C. J., took no part in this decision.