FRANK THOMPSON et ux., Appellants, v. J. P. NEWELL, Respondent.

Kansas City Court of Appeals, May 7, 1906.

1. **VENDOR AND VENDEE: Confidential Relations: Sources of Information: Evidence.** Buyer and seller sustain no confidential relations to each other but are business antagonists; and where the sources of the buyer's information are not corrupted by trick or artifice he should use diligence to inform himself.

2. ———: **Deceit: Damages: Action.** Though a representation be material and false and intended to deceive and did deceive, still there is no action unless the deceit resulted in damages.

3. ———: ———: ———: **Measure of.** In case of deceit in sales, the measure of damages is the difference between the contract price and the market value of the property, but the basic principle is compensation for the actual loss sustained as the direct result of the wrong.

4. ———: ———: ———: ———: **Contract.** If the contract be that the seller is to sell for costs and he misrepresents the cost, the measure is the difference between the actual and the represented value; but to the contract under judgmnt such rule does not apply since it fixes a price to be paid *in solido*.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*E. O. Brown* and *George Hubert* for appellants.

(1) The false statement by defendant as to the actual cost of the farm in question, was the representation of a fact, not a mere opinion as to the value of the property. The rule is well established that it is actionable fraud to deceive a purchaser into buying through false statement of the actual cost of property. Pendergast v. Reed, 29 Md. 398, 96 Am. Dec. 539; Carter v. Briuninger, 36 N. J. L. 513, 97 Am. Dec. 737; Salm v. Israel, 74 Iowa 314; Webb v. Steiner, — Mo. App. —,

87 S. W. 619-20; Page on Contracts, sec. 105; Teachout v. Van Hoesen, 76 Iowa 113, 14 Am. St. Rep. 206; Dorr v. Cory, 108 Iowa 732, 86 N. W. 256; McClellan v. Scott, 24 Wis. 81; Kerr on Fraud and Mistake, 88; Mason v. Thornton (Ark.), 84 S. W. 1048; Fairchild v. McMahon, 138 N. Y. 290, 26 Am. St. Rep. 701; Sanford v. Handy, 23 Wend. 260; Van Epps v. Harrison, 5 Hill 63, 40 Am. Dec. 314; Goldenburg v. Hoffman, 69 N. Y. 326; Zang v. Adams, 23 Colo. 408, 58 Am. St. Rep. 249; Wilson v. Higbee, 62 Fed. 723; Bradley v. Pool, 98 Mass. 169, 93 Am. Dec. 144; Clark v. Dickson, 6 Conn. B. N. S. 433; Stewart v. Lester, 56 Sup. Ct. (N. Y.) 49 Hun 58; McAleer v. Horsey, 35 Md. 439-52; McFadden v. Robinson, 35 Ind. 24; Paetz v. Stoppleman, 75 Wis. 510-15; 2 Warv. Vend. 972; Bunn v. Schnellbacher, 163 Iowa 328; Dillman v. Nadehopper, 19 Ill. App. 375-382; Adams v. Seule, 33 Vt. 538; Manning v. Albee, 11 Allen 524; Medbury v. Watson, 6 Pickering 246; Short v. Stevens, 63 Penn. 95. (2) A party defrauding in a contract has his election of remedies, he may stand to the bargain even after he discovers the fraud and recover damages on account of it, or he may rescind the contract and recover what he had paid. Heman v. Glann, 129 Mo. 325; Finley v. Bryson, 84 Mo. 669; Parker v. Marquis, 64 Mo. 41. (3) The full measure of damages due the plaintiffs in this case was the difference between the cost price actually paid for the property, and the present cost price for which it was sold by defendant, upon the false representation of the amount of the cost to him, and plaintiffs' reliance thereon. 4 Am. and Eng. Ency. Law, p. 125, sec. 8; Pendergast v. Reed, 29 Md. 398; Crater v. Brinniger, 33 N. J. L. 513; Salm v. Israel, 74 Iowa 314; Garnett v. Wannfried, 67 Mo. App. 437-41; 14 Am. and Eng. Ency Law, p. 123, sec. C; Webb v. Steiner, 87 S. W. 619-20; Page on Contracts, sec. 105; Morse v. Hutchins, 102 Mass. 440; Staines v. Shore, 16 Pa. St. 203; Veaxie v. Williams, 8 How. (U. S.) 134; Springer v. Kleinsorge, 83 Mo. 152; Bohm v. Bach, 33 Am. Dec.

561; Peacock's Appeal, 53 Am. Dec. 563; Towle v. Leavitt, 55 Am. Dec. 197-9; Bradley v. Baynard, 83 Am. Dec. 170-1; Cases Collected by Note in 96 Am. Rep. 267; Curtis v. Aspinnall, 19 Am. Rep. 336; Peck. v. List, 48 Am. Rep. 114-6; Hartwell v. Gurney, 13 Atl. Rep. 114; Stoyker v. Vanderbelt, 25 N. J. L. 502; 4 Sutherland Dam. (3 Ed.), p. 3410. (4) The allegations of the petition, which were fully sustained by the evidence going to the character of the alleged wrong as a wanton or willful injury by deceit and fraud entitled the plaintiffs to examplary damages by the great weight of authority. Singleton v. Kennedy, 9 B. Mon. (Ky.) 225; Lane v. Wilcox, 55 Barb. 615; Ives v. Carter, 24 Conn. 392; Platt v. Brown, 30 Conn. 336; Bennett v. Gibbons, 55 Conn. 450; Kelley v. Valentine, 17 Ill. App. 87; Tate v. Watts, 42 Ill. App. 103; Wheeler v. Randall, 48 Ill. 182; McAroy v. Wright, 25 Ind. 22; Byrum v. McGuire, 3 Head (Tenn.) 530; Oliver v. Chapman, 15 Tex. 400; Nye v. Merriman, 35 Vt. 438; Railroad v. Cellars, 93 Ala. 9, 30 Am. St. Rep. 17; Hafly v. Baker, 19 Kan. 9; Wilson v. Vaughan, 23 Fed. 229; Bergman v. Jones, 94 N. Y. 51; Croaker v. Railroad, 17 Am. Rep. (Wis.) 504; Borland v. Barrett, 76 Va. 28.

*McReynolds & Halliburton* and *Thomas & Hackney* for respondent.

(1) It appeared from the plaintiff's evidence and from the only evidence introduced on this subject, that the land purchased by the plaintiffs from the defendant was well worth the purchase price paid by plaintiffs and in consequence the plaintiffs were not injured. (2) Considering the situation of the parties, that they were strangers, dealing at arm's length the plaintiff's thorough examination of and familiarity with the land, their opportunity to investigate for themselves and the fact that the defendant did not resort to any trick or artifice to deter investigation, the alleged representation

of the defendant that he was selling the land to them at what it cost him, was not actionable. (3) Before the plaintiffs could recover in an action for fraud and deceit they must show that they have been injured or damaged. Fraud without damage gives no cause of action. Lenox v. Harrison, 88 Mo. 496; Crum v. Wright, 97 Mo. 18; Lewis v. Land Co., 124 Mo. 688; Bank v. York, 8 Mo. App. 604; McBeth v. Craddock, 28 Mo. App. 380; Remedy Co. v. White, 90 Mo. App. 498; Edwards v. Noel, 88 Mo. App. 434; Paretti v. Rebenack, 81 Mo. App. 494; Bank v. Byers, 139 Mo. 1. c. 652; Ming v. Woolfolk, 116 U. S. 599; Jordon v. Pickett, 78 Ala. 331; Holton v. Noble, 83 Cal. 7; Freeman v. McDaniel, 23 Ga. 354; Fuller v. Hogden, 25 Me. 243; Danforth v. Cushing, 77 Me. 182; Bayard v. Holmes, 34 N. J. L. 296; Nye v. Merrian, 35 Vt. 438; 14 Am. and Eng. Ency. Law (2 Ed.), pp. 137-8. See authorities cited in 23 Century Digest, column 1716, sec. 24, title G; Bartlett v. Blaine, 83 Ill. 27; Crater v. Binninger, 33 N. J. L. 513. (4) Before plaintiffs can recover in an action for fraud and deceit they must not only show false representation and damages, but must show reliance upon the representations, and that they were material and that they used reasonable care to investigate or ordinary prudence. Brownless v. Hewitt, 1 Mo. App. 360; Franklin v. Holle, 7 Mo. 241; Anderson v. McPike, 86 Mo. 293; Dulaney v. Rodgers, 64 Mo. 201; Priest v. White, 89 Mo. 609; Felix v. Shirley, 64 Mo. App. 621. See authorities cited in 13 Century Dig., column 1690, sec. 17, column 1696, sec. 19. (5) Representations made by the vendor of real estate as to what he paid for the land or as to the value of the land, or what he has been offered for the land, when made to a vendee as to whom he occupies no confidential relation, and where the vendee has an opportunity to and does examine the property, are not actionable even though false and made with a view to deceive, and will furnish no ground for an action for deceit. They are looked upon merely as representations in regard to

value, uttered for the purpose of enhancing the price and any party who relies upon them is considered as too careless of his own interest to be entitled to relief. 58 Central Law Journal, 487, note 24 (where authorities are carefully reviewed, and distinguished) ; Cornwall v. Real Estate Co., 150 Mo. 383; Brownlow v. Woolard, 61 Mo. App. 133; Litho. Co. v. Obert, 54 Mo. App. 247; Holbrook v. Connor, 60 Me. 578, 11 Am. Rep. 212; Martin v. Jordan, 60 Me. 531; Long v. Woodman, 58 Me. 52; Bourn v. Davis, 76 Me. 223; Homer v. Perkins, 124 Mass. 421; Parker v. Moulton, 114 Mass. 99; Cooper v. Lovering, 106 Mass. 79; Manning v. Albee, 11 Allen (Mass.) 522; Hemmer v. Cooper, 8 Allen (Mass.) 334; Gordon v. Parmlee, 2 Allen (Mass.) 212; Medbury v. Watson, 4 Met. (Mass.) 24, 39 Am. Dec. 726; Hank v. Brownell, 120 Ill. 161; Dillman v. Naddehoffer, 119 Ill. 567-575; Luck v. Downing, 76 Ill. 71; Noething v. Wright, 72 Ill. 390; Banta v. Palmer, 47 Ill. 99; Burns v. McHannah, 39 Kas. 87; Graffenstein v. Epstein, 23 Kan. 443, 33 Am. Rep. 171; Cole v. Smith, 26 Colo. 506, 58 Pac. 1086; Zang v. Adams, 23 Colo. 408, 48 Pac. 509; Weir v. Jones, 14 Colo. 493, 24 Pac. 262; Mayo v. Wahlgreen, 9 Colo. App. 506, 514, 50 Pac. 40; Shade v. Crevesten, 93 Ind. 591; Bell v. Byerson, 11 Iowa 236, 77 Am. Dec. 142; Williams v. Hicks, 2 Vt. 38, 19 Am. Dec. 693; Henderson v. Henshell, 54 Fed. Rep. 320, 4 C. C. A. 357; Benjamin on Sales (6 Ed.), p. 562.

JOHNSON, J.—Action to recover damages alleged to have been sustained in consequence of deceit practiced by defendant in the sale of land to plaintiffs. At the conclusion of the introduction of their evidence, plaintiffs were nonsuited and bring the case here on appeal.

The controversy arises out of the sale of a farm of four hundred and five acres lying in Jasper county some four miles from Carthage. On May 9, 1903, the parties entered into a contract in writing, wherein it was agreed that "in consideration of the payment by the parties of

the second part (plaintiffs) to the party of the first part (defendant) of the sum of $20,000, to be paid in the manner and times hereafter mentioned, the party of the first part agrees to sell and convey by good and sufficient warranty deed containing the usual covenants of warranty, free from all incumbrances, the following described real estate," etc. The terms of this contract are of no importance to the present inquiry and need not be stated. Before this suit was begun, it was fully executed by the payment in full of the purchase price and the delivery of a deed to plaintiffs. Possession of the premises was given them when the contract was made.

The deceit, which plaintiffs contend gives them a cause of action in damages, will appear from these facts collated from the evidence introduced by them.

Defendant, a real estate dealer in Carthage, owned and for some two years had owned the farm and was endeavoring to sell it. He bought it from a man living in Jasper county and paid $16,000 for it, but at his request the deed he received (duly recorded) expressed a consideration of $20,000. Plaintiffs are husband and wife and at the opening of the story were farmers living in Indiana. They sold their farm in that state and contemplated a trip to Kansas in quest for another. There fell into their hands at this time (no matter from what source) some advertising pamphlets, which defendant sowed broadcast, descriptive of the excellence of Jasper county farming lands in general and of those listed by defendant in particular. Thereupon, plaintiffs, accompanied by a neighbor and his wife (of the name of Patton), bought return trip tickets to Wichita, Kansas, by way of Carthage and stopped at the latter place to interview defendant. They went to the hotel and soon after called on defendant at his office. Defendant in the prosecution of his business of real estate dealer and agent was most diligent and enterprising. Carriages in charge of competent guides were furnished by him for the use of plaintiffs' party in the making

of various excursions into the country to inspect farms defendant had for sale. Plaintiffs say that during their stay in Carthage the attentions they received from defendant and his assistants were so unremitting that they had no opportunity for independent investigation and inquiry and their obsession was so complete that they received no information relative to farm lands and their value save through channels of defendant's selection. Finally, defendant's efforts to make a sale were concentrated on the farm in question. Plaintiffs were afforded every opportunity to thoroughly examine it and, to defendant's credit, no complaint is made of any misrepresentation respecting its acreage or quantity. The price asked by defendant was $24,000. Plaintiffs objected to this, thinking it too high and Mrs. Thompson expressed a preference for another farm on defendant's list. The negotiations came to a head in this wise. Mr. Thompson and his neighbor Patton visited the office of a Mr. Manley, another real estate agent in Carthage, and were engaged in conversation with him when one of defendant's employees entered and told plaintiff that defendant wished to see him at his office and had concluded to sell plaintiffs the farm at just what it cost — $20,000. Plaintiff and Patton then left Manley's office and went to the hotel where Mrs. Thompson was informed of the offer made. Mr. Thompson still accompanied by Patton then went to defendant's office and had this conversation with him. "Q. What was the first conversation you recollect? A. We sat down and I asked Mr. Newell, I says to him, 'This man tells me you would sell the place at cost and I come over to see if we could make a trade.' A. And what did he say? A. He says, 'Yes, I propose to sell it rather than to lose you,' or something of that kind. Q. Give his language as near as you can. A. 'That I will sell you the place at cost, $20,000.' "

Plaintiffs say they believed the statement and, knowing that defendant was an expert judge of real estate values, were convinced they would be getting a bargain

if they could buy the land at what one so expert actually paid for it.   This fact alone induced them to make the purchase.   Defendant prepared the written contract for the sale and before it was signed Mrs. Thompson, who was not altogether satisfied, announced in defendant's presence her unwillingness to close the transaction, whereupon defendant exclaimed, "You can have it at cost rather than lose you — rather than lose this deal . . . we will let you have it at just what I paid for it.  I am not making a penny on it."

After this the contract was signed by defendant and both plaintiffs; partial payments were made as agreed on the purchase price and plaintiffs took possession of the farm.   They discovered the fact that the cost of the farm to defendant had been misrepresented before all of the purchase money was paid and before the delivery of a deed to them, but paid the full price and accepted the deed before bringing this suit.

Mr. Thompson was fifty-seven years old, an experienced farmer and had bought and sold to advantage several farms in Illinois and Indiana.   From their testimony, we judge that both he and his wife are persons of more than average intelligence and business capacity. He lived in Jasper county for about three years during the decade ending in 1880 and worked on a farm near the land he bought.   Plaintiffs were diligent and thorough in their examination of the different farms they visited and were entirely too business-like for us to believe that they reposed undue confidence in the opinions of men with whom they knew they were dealing at arm's length.   Notwithstanding the efforts defendant made to monopolize their time, he was by no means successful.   Plaintiffs rode in his carriages and accepted the social attentions he offered, but found time and opportunity for enlightenment from independent sources. Their visit to Manley's office was so timely that it smacks strongly off a strategic move designed by plaintiffs to beat down defendant's price.   We have closely consid-

ered and analyzed the testimony of both plaintiffs and are satisfied that the parties were well matched in shrewdness and business ability. It was a case of "diamond cut diamond" and plaintiffs themselves do not show that they were worsted in the encounter. Their own witnesses say the land was well worth the price paid and in this view of the testimony the only foundation, upon which an argument in favor of the cause of action asserted may be based at all, is the bare fact that defendant said he paid $20,000 for the land when in fact he paid $4,000 less and that this statement was the predominating influence in the effectuation of the sale. Plaintiffs' theory is that they had the right to affirm the sale after the discovery of the alleged fraud, as they did, and then recover of defendant in damages the difference between the price he actually paid and what he said he paid.

Despite our own conviction that nothing said or done by defendant imposed upon the credulity of plaintiffs or prevented them from the free exercise of their own judgment, we will not permit this to control our disposition of the case, but will give plaintiffs the benefit of the inference, which they say the jury should have been permitted to draw from the facts in proof, that they were isolated from outside means of information by the conduct of defendant and influenced to their conclusion by his false statement of the cost of the land to him.

We see nothing in the conduct of defendant preceding the utterance of the false statements that plaintiffs in their situation should have suffered to interfere with their freedom of action. It is perhaps as old as barter and trade itself for a vendor, who has something to sell, to endeavor to keep a prospective purchaser to himself until he can accomplish a sale. Buyer and seller sustain no confidential relation to each other, but are business antagonists. Plaintiffs do not contend that they labored under any disability. Independent sources of informa-

tion were at hand for their seeking. It is not suggested that defendant by fraudulent trick or artifice either corrupted apparently disinterested advice or made it inaccessible. It was there for plaintiff's use and, if they chose to neglect opportunity and permitted themselves to be taken in hand by defendant and their whole time occupied by him, their own carelessness and indifference to their interest must be regarded as the responsible cause of any actual inequality in their position as compared with that of defendant. In law, if not in fact, the parties stood on an equal footing up to the point of the making of the false representation respecting the cost of the land.

Plaintiffs virtually found the cause of action asserted upon the deception, which they say was accomplished by this false utterance, and argue that the proof adduced should be held sufficient to support the action for these reasons. The representation related to a material fact and was not the mere expression of an opinion on the subject of value: it was false and by defendant known to be false when made: was intended to deceive and did deceive and but for their reliance in its supposed verity plaintiffs would not have bought the land at the agreed price.

All of this may be conceded for argument and yet plaintiffs must fail in this action because of the conceded fact that the land, when sold, was well worth the price stipulated in the written contract. To support an action at law for deceit actual damages must have resulted to the plaintiff from the deception. [Lenox v. Harrison, 88 Mo. 496; Crumb v. Wright, 97 Mo. 18; Lewis v. Land Co., 124 Mo. 688; McBeth v. Craddock, 28 Mo. App. 380; Live Stock Remedy Co. v. White, 90 Mo. App. 498; Edwards v. Noel, 88 Mo. App. 434; Paretti v. Rebenack, 81 Mo. App. 494; Bank v. Byers, 139 Mo. l. c. 652.]

As a general rule, the measure of damage is the difference at the time of sale between the contract price

and the market value of the property, but the basic principle underlying all rules for the measurement of damages in such cases is compensation to the injured party for the actual loss sustained as the direct result of the wrong.

Plaintiffs argue that they are entitled to the bargain defendant had in the land in the price he paid for it and say that "if one agrees to sell property or an interest therein at what it cost him and fraudulently misrepresents the cost, the measure of the purchaser's damages is generally the difference between the actual and the represented value," citing Pendergast v. Reed, 29 Md. 398; Crater v. Brinninger, 33 N. J. L. 513; Salm v. Israel, 74 Iowa 314; 14 Am. and Eng. Ency. of Law, 185. This rule certainly should be applied to cases where the contract made by the parties, in terms, provides that the cost of the property to the vendor is to control the price to be paid by the vendee. Enforcing the rule under consideration in such cases is in effect nothing more than the enforcement of the very letter of the contract through the medium of an award in damages for its fraudulent breach. Thus, in Pendergast v. Reed, supra, the contract made by the parties was as stated by the court "a purchase for certain considerations of one-eighth of the vessel *at its cost price to the defendant* and a false representation of this price." The court very properly held the fact that the vessel was actually worth the value represented immaterial to the measure of damages because plaintiff agreed in the contract to pay, not one-eighth of the value of the vessel, but that proportion of its actual cost to the defendant. So, in Salm v. Israel, supra, the written contract signed by the parties contained the stipulation that the goods were "to be invoiced to second parties at the invoice price that first parties purchased same for." The vendor fraudulently invoiced the goods to the vendee at a higher price and in an action brought by the latter it was held the plaintiff should recover the amount paid by him in excess of

the contract price — the actual cost of the goods to the vendor. . In Crater v. Binninger, supra, the rule, we think, should govern the case in hand, is adumbrated in this illustration. "Let us suppose land costing $5,000 to be sold under a false representation that it cost $10,-000. Now, it is obvious that the damage which the vendee will sustain under ordinary circumstances will be the difference between what he pays for the land and its actual value. If he pay $10,000, the price falsely represented as its original cost, and it be worth that sum and he actually sell it at that rate, he will sustain in point of fact no damage whatever. Can it be pretended then that in such state of affairs, sustaining no loss, he will be entitled to recover anything whatever because of the fraud practiced upon him?"

In the written contract before us, no reference to the cost of the farm to defendant is to be found, but plaintiffs agreed therein, without qualification, to pay the price of $20,000. Plaintiffs are not seeking to rescind the contract. They have affirmed it and accepted its benefits. Unlike the defendant's in the Pendergast and Salm cases, who did not fully perform the conditions of their respective contracts, defendant here conveyed the land at the price both parties understood, intended and agreed should be paid for it and thus fully performed the conditions imposed upon him under the written contract. Under circumstances such as these, the true rule, both in law and morals, for the measurement of damages in an action for deceit is the difference between the contract price and the reasonable market value of the land. It follows that, as plaintiffs have suffered no injury under this rule, an action in damages cannot be sustained.

Nor can we accept the suggestion that plaintiffs, at least, are entitled to recover nominal damages. In the absence of actual damage no cause of action at law inured to them. ·

What we have said is sufficient to control the dis-

position of the case and, therefore, a discussion of the other questions argued would serve no useful purpose. The judgment is affirmed. All concur.