JOSEPH A. DELANEY *vs.* BERNARD F. DOYLE & another.

SAME *vs.* HERBERT B. RUSSELL, administrator.

Suffolk.    December 13, 14, 1928. — May 28, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Broker,* Commission. *Contract,* Construction, Performance and breach. *Pleading, Civil,* Demurrer. *Practice, Civil,* Appeal.

An owner of land agreed to pay a broker a commission in a certain sum if he procured a purchaser for the property at $80,000, or such price as should be agreed upon. The broker produced a customer who offered $75,000. The owner on several occasions stated that that price and a certain arrangement concerning mortgages proposed by the customer were acceptable to him, but the owner's wife on each occasion refused to sign a deed, and the broker did nothing more about a sale of the property. A few days later a second broker interviewed the customer and was referred by him to a friend who had planned to help him in

financing the property, and who expected a profit therefrom. The friend offered $75,000 for the property which was refused by the owner. The second broker then procured an offer of $76,000 from the friend, with the same arrangement relative to mortgages which previously had been proposed by the customer, no commission to be paid to the second broker by the owner. This offer was accepted by the owner and his wife. The friend assigned the agreement of sale to the customer, who received a deed of the property a few weeks afterwards, paid the friend the profit he expected and paid the second broker a commission. In an action by the first broker against the owner for a commission, the trial judge ordered a verdict for the defendant. *Held*, that

(1) A finding was not warranted that the plaintiff was the predominant cause of the sale to the customer;

(2) Nothing appeared to show that the owner or his wife terminated the first negotiations with the customer in bad faith, or that they pretended to reject the customer's first offer in order to deprive the plaintiff of his commission;

(3) The verdict properly was ordered for the defendant.

With the action above described was tried an action of contract for $1,000 by the first broker against the customer. There was evidence that, when the plaintiff was negotiating with the defendant, the defendant told the plaintiff that he would not purchase the property if the plaintiff were to receive the usual commission from the owner, but, if the plaintiff would forego any claim against the owner for a commission, he would make the owner the offer of $75,000 and would pay the plaintiff $1,000 if and when he bought the property. The trial judge ordered a verdict for the defendant. *Held*, that

(1) The plaintiff could not properly be found to have foregone any claim for a commission against the owner, since he never became entitled to a commission;

(2) The defendant never bought the property within the meaning of his agreement with the plaintiff; that agreement referred to a purchase by the defendant as a result of the plaintiff's efforts;

(3) The evidence permitted only that interpretation of the agreement, and its interpretation was a question of law for the judge;

(4) The verdict properly was ordered for the defendant.

In an action of contract which was before this court upon an exception saved by the plaintiff to the ordering of a verdict for the defendant, this court, having decided that the exception must be overruled because the evidence did not warrant a verdict for the plaintiff, did not consider an appeal previously taken by the defendant from an order overruling a demurrer to the declaration.

TWO ACTIONS OF CONTRACT. Writs dated August 25, 1926, and August 27, 1926, respectively.

The second action, originally against Cornelius A. Russell, was by a broker to recover a commission for procuring the sale of real estate of the defendant. After the death of

Russell, the administrator of his estate was admitted to defend the action.

The first count of the declaration in the first action contained allegations that the plaintiff had been hired by Russell to procure a purchaser for his property; that the plaintiff thereafter solicited the defendants to purchase the property; that the plaintiff and the defendants agreed that the plaintiff should waive all claim against Russell for a commission by reason of a sale of the property to the defendants, who, in consideration thereof, would pay the plaintiff the sum of $1,000 if and when they purchased the property from Russell; that the defendants thereafter purchased the property from Russell; that the plaintiff waived all claim for the commission which thereupon became due to him from Russell; and that the defendants owed the plaintiff $1,000. The other counts of the declaration were upon an account annexed for the same sum. The defendants demurred. The demurrer was heard by *Morton*, J., and was overruled, and the defendants appealed.

The actions thereafter were tried together in the Superior Court before *Greenhalge*, J. Material evidence is stated in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant in each action. The plaintiff alleged exceptions.

*C. H. Cronin*, for the plaintiff.

*J. H. Kenney*, for the defendants Doyle and another.

*L. G. Roberts*, for the defendant Russell, administrator.

WAIT, J. There are here two cases which were tried together. The plaintiff is a real estate broker, who sues Russell for a commission earned, he claims, in obtaining customers who purchased certain premises from Russell; and who sues the Doyles upon an alleged agreement to pay him $1,000, if he would claim no commission from Russell and they obtained the property at their price. The sale contemplated by the plaintiff did not take place; but a sale was made by Russell to the Doyles under such circumstances that, as the plaintiff contends, both parties are liable to him in the actions brought. At the trial the judge directed verdicts for the defendants; but it was agreed that, if this court

held that on the material and competent evidence there was error in so doing, verdicts were to be entered for the plaintiff for $1,000, and interest.

The evidence, taken most strongly for the plaintiff, would support findings as follows: Russell, then owning the premises in question, about May 1, 1926, offered to pay the plaintiff the usual real estate brokers' commission (three and one half per cent on the first $15,000, two and one half per cent up to $85,000, and one per cent beyond that), if he procured a purchaser at a price of $80,000, or such price as should be agreed upon. June 26, 1926, the plaintiff interested the Doyles, who before had known of the property and had desired to purchase it, in a purchase through him. They examined it, and told him that night that they would not pay $80,000 for it, nor would make an offer for it, if he were to get the regular commission, because, in reality, they would have to pay it in the price; but if he would take $1,000, and forego any claim on Russell, they would make Russell an offer of $75,000 and the payment of the plaintiff, and would pay him $1,000, if and when they bought the property. He arranged with Russell to meet them on June 28. Russell then said he had never heard of the Doyles. At the meeting, the Doyles made the offer, saying nothing of the amount to be paid the plaintiff. He assented. Russell was favorably impressed, said that he would take a second mortgage and did not object if they secured an increase from $37,900, the then principal of the existing first mortgage, to $50,000; but he did not accept the offer. He would let the Doyles know by noon June 29. The plaintiff and the Doyles saw the first mortgagee and arranged for the increase. Russell did not send word. On the evening of June 29, the plaintiff saw Russell and his wife and was told by Russell that he was ready and willing to accept the offer but that his wife was not and that no title would be good without her signature. The plaintiff repeated this to the Doyles and arranged with them to visit the Russells on the next day. On June 30, the meeting occurred. The plaintiff said to Russell, "Mr. Russell, if I understood correctly when I was here yesterday, you said you were ready and willing to accept Mr. Doyle's offer of

$75,000 for the property here and sign an agreement to sell but that your wife didn't want to sign . . . if I understand you correctly you are still ready and willing to accept that offer." Russell said, "Yes, that is the exact situation." Doyle told Russell that they had understood that he would accept their offer and so he went to the Taunton Savings Bank and made application to have the mortgage increased. Mrs. Russell was brought into the room and the plaintiff said to her, "I thought I would like to know whether you had changed your mind in reference to selling the property for $75,000, and sign an agreement to sell to Mr. Doyle." She said, "No, that the situation was just the same, she hadn't changed her mind." He asked what was the trouble; is it a question of more money? She said, "No, . . . it was something that cropped up suddenly that caused her to change her mind . . . something that she didn't want to talk about . . . and she wouldn't offer any further explanation." The Doyles stated that they were ready and willing to go through and purchase the property and meant business. Then they left the house; Mrs. Russell having said, however, that if she changed her mind she would let them know. She never did send any word. The plaintiff did nothing further with regard to selling the property; but about July 6, 1926, he met the Doyles and talked to them about the property. Bernard Doyle said he thought it was funny the way that Russell acted in reference to the sale of the property. He told Bernard that the property was worth $80,000; but Bernard said he wouldn't pay $80,000, as Russell practically offered to sell it to him for $75,000.

Again taking the testimony most strongly for the plaintiff, it could be found that what happened thereafter was this: Three or four days after June 30, one Fowler came to the Doyles, told them he thought they were interested and took up the matter of a purchase by them. They told him to see Kittredge. During the activity of Delaney, they had talked of the purchase with one Kittredge who planned to help them in the financing, and expected a profit therefrom. Kittredge saw the Doyles after seeing Fowler and advised

Doyle to buy the property for $76,000, and to pay Fowler his commission. They told him, "If I wanted to buy it for that price, that it was a good buy, to go ahead." Kittredge thereupon offered $75,000, for the premises. Russell refused the offer. Fowler got Kittredge to offer $76,000. Russell accepted this offer and with his wife on July 8, received $500, as "down payment" and executed an agreement with Kittredge for purchase and sale on or before August 10, for $76,000, on the same terms as to increase of first mortgage and amount of second mortgage which had been discussed with the Doyles; no payment of commission to Fowler was to be made by the seller. Kittredge sold this agreement to the Doyles. The Russells, by deed dated July 21, acknowledged August 6, and recorded August 7, 1926, conveyed the premises to the Doyles, who paid them in accord with the agreement, and who also paid to Kittredge $200, the profit he had expected to make, and to Fowler $500, the amount promised him by Kittredge. The plaintiff testified that on August 9 he met Russell and was told by him that he had sold for the same price $75,000, to the same persons the plaintiff had brought to him, who had "bought it through Fowler, that is, they had bought it through a straw man." He testified further that about a week after August 9, Bernard Doyle told him, when asked if he had bought the property, "Yes, I got it, but I don't know how I did it,. I got it anyway."

The judge was right in directing the verdicts. The plaintiff's relations with Russell were those of a broker. He owed Russell absolute fidelity in obtaining the best possible terms for him. *Alvord* v. *Cook*, 174 Mass. 120. *Carpenter* v. *Fisher*, 175 Mass. 9. *Little* v. *Phipps*, 208 Mass. 331. We need not discuss whether he failed in his obligation, because the evidence requires the finding that he never fulfilled the terms of the seller's offer. The offer made by his customers was not $80,000, nor was it a price agreed upon by the principal with the customers. It was rejected *in toto*. Negotiations through him were never renewed. An unsuccessful broker does not become entitled to a commission, if, later on, a successful one brings about a purchase by the

same customer. *Ward* v. *Fletcher*, 124 Mass. 224, 225. *Smith* v. *Kimball*, 193 Mass. 582. It is true that if the first broker is the real predominating cause of the purchase, although it is completed through the second, the first may obtain his commission; *Whitcomb* v. *Bacon*, 170 Mass. 479, but this cannot be if the first negotiation came *bona fide* to an end, and was finally, though only for a time, abandoned by buyer and seller who renew negotiations as the result of another broker's intervention. *Nichols* v. *Atherton*, 250 Mass. 215.

There is here no evidence to justify a finding of complicity on the part of Russell or his wife to simulate an abandonment of the sale, in an attempt to defraud the first broker of his commission while securing the benefit of his labors. See *Leonard* v. *Eldridge*, 184 Mass. 594, 595. Fowler had been empowered to obtain a sale, and had spoken with the Doyles as early as the plaintiff. It was not he who led them, in May or June, to decide on a purchase if they could obtain one at their price; but, after their efforts had failed, it was he who brought about the actual conveyance at a different price for Russell and with payments to Kittredge and himself. Nothing connects the Russells with knowledge of the further efforts of the Doyles, if indeed the efforts were theirs, until the day of the execution of the deed. The case is one of failure on the broker's part to obtain a customer before the negotiation is at an end. *Des Rivieres* v. *Sullivan*, 247 Mass. 443.

The case against the Doyles stands differently. The plaintiff was not a broker for them. If he had been, he would have been acting for both sides and unable to recover a commission from either. *Alvord* v. *Cook, supra.* His claim in that case rests upon the express contract between them; in substance, I promise to abandon my claim on Russell, in consideration of your promise to pay $1,000, if and when you buy the property. Neither side could be found to have performed that contract. The plaintiff had no claim to abandon when the negotiations fell through. The defendants did not "buy the property" in the sense in which both parties understood the words. We do not think that

contract referred to anything but a purchase upon an offer made in the pending negotiations. See *Nichols* v. *Atherton, supra.* Rights under that contract ceased to exist when the trade then in progress ended without a purchase. No finding of the jury supported by the evidence could lead to a different interpretation of the contract. The interpretation was matter of law for the judge.

In view of the decision here reached, the appeal of the defendants Doyle need not be discussed.

It follows that in both cases the exceptions are overruled; and in the case against Doyle et al. the appeal is dismissed.

*So ordered.*