**THEIS et al. (CULLING et al., Interveners) v. LUTHER.**

No. 13118.

Circuit Court of Appeals, Eighth Circuit.

Oct. 29, 1945.

Rehearing Denied Dec. 5, 1945.

Frank P. Barker, of Kansas City, Mo., and Warren A. Seavey, of Cambridge, Mass. (Chauncey H. Clarke, of St. Louis, Mo., on the brief), for appellants.

Roy P. Swanson, of Kansas City, Mo. (Paul D. Kitt, of Chillicothe, Mo., and Charles M. Blackmar, of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse the dismissal of involuntary proceedings in bankruptcy against Durward Belmont Luther. The original petition in involuntary bankruptcy was filed by one creditor alleging that there were fewer than twelve creditors, but the alleged bankrupt's answer disclosed there were twenty-two. Subsequently, three claimants intervened, each asserting that he had a provable claim fixed as to liability and liquidated as to amount, aggregating more than $500, and it was contended that with the original petitioner there were four creditors petitioning, as required by 11 U.S.C.A. § 95, sub. b. The dismissal followed on the determination of the Referee, affirmed by the District Court, that the creditors of the alleged bankrupt were more than twelve in number and that only the original petitioner, and neither of the interveners, had provable claims within the meaning of 11 U.S.C.A. § 95, sub. b.

On the question as to the number of the alleged bankrupt's creditors at the time the petition in bankruptcy was filed, the decision appealed from was in accord with and was compelled by this court's declaration of the law in Grigsby-Grunow Co. v. Hieb Radio Supply Co., 8 Cir., 71 F.2d 113. Though some of the claims counted to make the number of creditors twenty-two were "small in amount, current claims, payable at stated intervals", they were all to be counted under the Act. We have considered the extended argument and citations of appellants, but we see no occasion to depart from or to further discuss this court's controlling decision.

As to the number of petitioning creditors.

It appears from the pleadings and affidavits of petitioner and interveners (on which dismissal was based) that the alleged bankrupt was the trustee and agent for the original petitioning creditor [1] (a Committee), and was vested with the legal title to and was engaged as agent to sell lands acquired by the Committee. He negotiated sales of parcels of the land to the several interveners at certain prices, but

---

[1] "Harry Theis, Wyllys K. Bliss and W. L. Hager, not individually but as constituting the majority of the members of the Bondholders' Protective Committee in the Matter of certain bonds of Grand River Drainage District of Livingston and Linn Counties, Missouri, and as such majority fully authorized to act as such Bondholders' Protective Committee, of 410 Olive Street, in the City of St. Louis and State of Missouri."

deceived the Committee as to the amounts obtained on such sales in that the purchasers paid and he received a larger amount on each of the sales than was shown on the sale contracts forwarded to and signed by the Committee. The Committee is not shown to have fixed prices on the lands put into the hands of the agent for sale. The deed in each instance was executed by the alleged bankrupt, the holder of the legal title, the consideration stated in each deed being one dollar, but the contracts of sale were first signed by the purchaser proposing to buy and then transmitted to and signed by the Committee and then returned to the purchaser. The actual consideration appeared on the sales contracts when the purchasers signed them and when they got back to them signed by the Committee, but when transmitted to the Committee and signed by it the consideration was shown at a smaller amount. The deceit was not accomplished by erasure or forgery, but by switching one of the sheets of the contract of sale document. The difference between the amounts paid by the purchasers and the amounts disclosed to the Committee was pocketed by the trustee-agent, the alleged bankrupt.[2]

The Committee. in its pleading praying adjudication in the bankruptcy sets up twelve instances of sales to named purchasers of its lands (not including interveners) through its said trustee-agent in which the same deceit and fraud was practiced upon it resulting in the agent's unjust enrichment in the total sum of $15,819, and it asserts a provable claim, fixed and liquidated against him on account thereof, in that amount.

Each of the interveners, apparently recognizing that the assertion of a cause of action in tort for damages for deceit or fraud would not present a provable claim fixed as to liability and liquidated as to amount, asserts in his petition that he has a provable claim for the amount of unjust enrichment that accrued to the trustee-agent in respect to the purchase of the petitioner.

Both the Referee and the District Court concluded that if the fraud was practiced as charged, the obligation of the alleged bankrupt (and of his estate if he was adjudged bankrupt) was to account for the amount of his unjust enrichment to the Committee and not to the purchasers of the lands. The purchasers had not been deceived as to the land they bought and kept, nor as to its value, but were justly obligated to pay the price therefor which they had proposed to pay in their signed agreements and which they had paid. It was the agent's duty to his principal to obtain the best price he could from them. But upon elemental principles of agency and fiduciary relations, the dishonest agent was bound to account to the Committee for all that he had actually obtained from the purchasers on the sale of the lands.[3]

It is argued for appellants that the decision was contrary to Missouri law and it is said that McLennan v. Investment Exchange Co., 170 Mo.App. 389, 156 S.W. 730, though not expressly overruled by the Missouri Supreme Court, has been modified in Hack v. Crain, Mo.Sup., 1915, 177 S.W. 587, and Hays v. Smith, Mo.Sup., 213 S.W. 451.

The implication of the McLennan case is that a purchaser under the circumstances shown by the interveners here has no cause of action of any kind against the dishonest agent. On the other hand, it may be argued that the Hays case and the Hack case recognize the existence of some right of action against a dishonest agent for a positive misrepresentation of his authorized sale price. But there is nothing in the cases to support any right of action other than one in tort for fraud or deceit.

■ Although we have examined the very numerous cases cited for appellants, we are not persuaded that the facts shown in respect to their purchases of land from

---

[2] His answer on file denies this fraud.

[3] The cases cited to sustain the conclusion of the Referee and the District Court are, inter alia: 12 C.J.S., Brokers, § 41, p. 96 (note 35); Delaney v. Russell, 267 Mass. 171, 166 N.E. 623; Peevy v. Wilkes, 48 Ga.App. 114, 172 S.E. 108; Frowe v. McPheeters, 122 Kan. 420, 251 P. 1105; Middlefork Cattle Co. v. Todd, 49 Mont. 259, 141 P. 641; 9 C.J., § 38, p. 537 (cases cited in note 30); 12 C.J.S., Brokers, § 41, p. 99 (cases cited in note 64); McLen-

nan v. Investment Exchange Co., 170 Mo. App. 389, 156 S.W. 730; R. Harris & Co. v. Weller, 52 App.D.C. 6, 280 F. 980; Ripy v. Cronan, 131 Ky. 631, 115 S.W. 791, 21 L.R.A.,N.S., 305; Aronowitz v. Wollard, 166 App.Div. 365, 152 N.Y.S. 11; Bradley v. Oviatt, 86 Conn. 63, 84 A. 321, 42 L.R.A.,N.S., 828; Sinna v. Sperry Realty Co., 181 Minn. 183, 232 N.W. 5; Thompson v. Newell, 118 Mo.App. 405, 94 S.W. 557; Myron M. Navison Shoe Co. v. Lane Shoe Co., 1 Cir., 36 F.2d 454.

the Committee through its trustee-agent gave rise to any contract or quasi contract obligation on the part of the agent to divert his unjust enrichment from the Committee (to which he was bound to account for it) to the purchasers. The Committee never assigned or relinquished its rights to the purchasers. The interveners showed no provable claims within the statute vested in them against the bankrupt.

We have noted interveners' analysis of the transactions through which they proposed to buy, and did buy and pay for and receive and now hold their lands, and the contentions as to the legal conclusions that should follow from particular details, but we think the substance of the transactions was rightly appraised by the Referee and the District Court, and there is no clear showing that the District Court misconceived or misapplied Missouri law in its decision.

As we find no error in the dismissal of the bankruptcy, the several orders and the judgment of dismissal are affirmed.