ALFRED E. ALVORD & another *vs.* SARAH E. COOK & another.

Middlesex. March 22, 1899. — July 3, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Broker's Commission — Evidence — Construction of Contract — Arrangement between Brokers to share Commissions — Fraud — Equity.*

Oral evidence is admissible to show the situation of the parties when the writing was made in order to aid in its interpretation, but such evidence is not admissible to enlarge, vary, or contradict the writing.

If A., a broker, and B. execute a contract, by which B. is to convey a parcel of land and pay a sum of money to A. as a commission upon an exchange negotiated by A. of real estate agreed on between B. and C., the deed to be delivered and cash paid at the time when the " agreement between B. and C. is carried into effect," and the parcel to be conveyed to A. being a part of the land which B. is to receive from C. in the exchange, and the time for performing the agreement between B. and C. is postponed from time to time, and the agreement is finally abandoned, neither party attempting to enforce it, the contract between A. and B. is to be interpreted as not making the payment of A.'s commission conditional upon the actual carrying into effect of the agreement between B. and C.

An arrangement between a broker who is employed by A. to effect an exchange of real estate with B., and a broker who is employed by B. in such a way as would ordinarily entitle him to a commission if an exchange was effected, by which the two brokers are to share equally the commission obtained by each, neither A. nor B. having any knowledge of this arrangement, is not, as matter of law, such a fraud as will preclude A.'s broker from recovering his commission upon the exchange being effected.

BILL IN EQUITY, filed May 11, 1898, to recover damages for an alleged breach of the following agreement: "Dec. 29th, '97. We, the undersigned, hereby agree to take as our commission in the transaction referred to in an agreement of even date herewith between Sarah E. Cook and Chas. E. Cook, trustees, and Albert L. Jewell, the equity in the Antwerp St. estate mentioned therein, subject to a $3,000 mortgage, and $200 cash, and we, the said trustees, hereby agree to pay commission as above indicated; deed to be delivered and cash paid at the date that the said agreement between said Cooks and said Jewell is carried into effect. Sarah E. Cook for herself and co-trustee, Henry A. Richards, Alvord Bros. and Co." Hearing before *Knowlton*, J., who reported the case for the consideration of the full court, in substance as follows.

" The first question arises on the construction of the contract in writing on which the suit is brought. I decline to consider any oral testimony to enlarge, vary, or contradict the writing. I consider the evidence to show the situation of the parties when the writing was made, to obtain from it such aid as we can in the application and interpretation of the contract.

" I find that the defendants had employed the plaintiffs as brokers to act for them in obtaining a sale or exchange of their property under such circumstances as would entitle the plaintiffs to a commission on obtaining a satisfactory contract for a purchase or exchange. They obtained a contract which was satisfactory to the defendants, in connection with an arrangement whereby the plaintiffs were to receive their commission in part by a conveyance of the Antwerp Street estate, and in part by a payment of $200, instead of being paid entirely in cash, as is shown by the contract in evidence." Thereupon the contract between the defendants and Jewell, dated December 29, 1897, was executed, by which Jewell agreed to sell to the defendants certain estates in that part of Boston called Allston,

also an estate on Antwerp Street in Allston, the same to be subject to a mortgage of $3,000, and the defendants agreed to sell to Jewell a parcel of land in Newton, " all of said premises to be conveyed on or before February. 3rd, 1898 " ; and on the same occasion the paper in suit was signed. Both parties then expected that the Antwerp Street estate would be conveyed by Jewell to the defendants on February 3, 1898, subject to a mortgage of $3,000, in accordance with his agreement. The defendants were ready to perform their contract with Jewell on February 3, but Jewell was not ready, and at his request performance of the contract was postponed until February 15, 1898. On this latter date the defendants were ready and offered to perform their contract, but Jewell was not, and at his request the time for performance was again extended, this time to March 1st. At the last date the defendants were again ready and desirous to perform their contract, but Jewell was not. Jewell endeavored to get another extension of the contract, but the defendants refused to agree to it, and declined to hold themselves longer bound to Jewell under .the contract, and abandoned it, and have never since attempted to carry it out or to enforce it.

" The first question is whether the writing should be interpreted as making the payment of the plaintiffs' commission conditional upon the actual carrying into effect of the contract between the defendants and Jewell. I am of opinion that it should not. As the defendants had a contract, which apparently could have been enforced in equity, I am of opinion that on their abandonment of the contract and failure to attempt to enforce it the plaintiffs became entitled to receive their commission."

" I find that the employment of the plaintiffs by the defendants was such as should have made them exclusively the representatives of the defendants' interests, and should have kept them free from any alliance with representatives of the other party to the contract which might subject the brokers on either side to temptation to act adversely to their clients' interests. Jewell was represented by a broker who was employed in such a way as would ordinarily entitle him to a commission if an exchange were effected. The plaintiffs before effecting an exchange entered into an arrangement with Richards, the broker of Jewell,

that the brokers for the contracting parties should share equally the commissions obtained on both sides.

"The plaintiffs contended that the defendants were informed of this arrangement. I do not find that the contention is established by proof. In a letter to the defendants they said, 'Our commission is not nearly as much in this transaction as in a case where we were the only brokers, for we learned of the property through Mr. Jewell's broker, with whom we shall have to divide, — you can therefore judge of our disinterestedness in recommending this trade.'

"This did not indicate that they were to have one half of the commissions of Jewell's broker, but merely that they would retain only one half of their own; I therefore find that the defendants had no knowledge of the real arrangement, and I also find that Jewell had no knowledge of it. There was other evidence which indicated that Jewell's broker was to receive a substantial commission from Jewell, and that the defendants were told something about it.

"I deem an arrangement of this kind under ordinary circumstances to be against public policy. Whether under the circumstances of this case the plaintiffs should be cut off from recovering on this account, I am in doubt. Except in these particulars the plaintiffs' case is made out."

Such decree was to be entered as law and justice might require.

*H. M. Williams & H. H. Baker*, for the plaintiffs.

*R. Lund*, for the defendants.

HAMMOND, J. The ruling of the court as to the admission of the oral testimony and the use to be made of it in connection with the contract between the plaintiffs and the defendants was in accordance with settled principles, and was correct. 1 Greenl. Ev. §§ 277, 282. *Bassett v. Rogers*, 162 Mass. 47.

The first question in the case as to liability is whether the contract is to be interpreted as making the payment of the plaintiffs' commission conditional upon the actual carrying into effect of the agreement of sale between the defendants and Jewell. It is manifest that the defendants could not convey to the plaintiffs the Antwerp Street estate until they had first obtained a conveyance of it from Jewell, and it is provided that the deed of the

same shall be delivered and cash balance due the plaintiffs shall be paid at the time the " agreement between said Cooks and said Jewell is carried into effect." The contract assumed the validity and binding force of the agreement of sale between the principals, and the sentence last above quoted, without the aid of the surrounding circumstances, is susceptible of two interpretations: first, as being a clause for the protection of the defendants and providing that they should pay nothing unless Jewell carried out his contract or the defendants saw fit to make him do so ; and, second, as being a clause for the protection of the plaintiffs and limiting the time beyond which they would not have to wait for their commission.

Here the situation of the parties and the circumstances existing at the time of the execution of the contract may properly be considered. The defendants had employed the plaintiffs as brokers to act for them in obtaining a sale or exchange of their property under such circumstances as would entitle the plaintiffs to a commission on obtaining a satisfactory contract for a purchase or exchange. They obtained a contract which was satisfactory to the defendants in connection with an arrangement whereby the plaintiffs were to receive their commission in part by a conveyance of the Antwerp Street estate, and in part by a payment of two hundred dollars, instead of being paid entirely in cash. Both parties then expected that the Antwerp Street estate would be conveyed by Jewell to the defendants on February 3, 1898, subject to a mortgage of three thousand dollars in accordance with his agreement. The contract and the agreement of exchange were executed at the same time.

The plaintiffs had done all they were employed to do. They had obtained for the defendants a contract with Jewell which the defendants could compel him to carry out, and all parties expected it would be carried out. The plaintiffs had no further power in the matter, — the rest was to be done by the defendants. But they had the right to assume that the defendants would use all reasonable efforts to do the rest, and to avail themselves of the agreement with Jewell.

The defendants needed nothing to protect them because all parties assumed that the contract was valid, and the defendants were masters of the situation as to whether it should be carried

out. It is not reasonable to suppose that the plaintiffs intended to leave the question of the payment of their commission in a matter where they had performed their whole duty by obtaining a valid enforceable agreement for the exchange of the property to the chance of a subsequent cancellation of the agreement between the defendants and Jewell, or to the whim or caprice of either of the principals. Such an interpretation does not seem natural under the circumstances.

On the contrary, there was a reason why the time for the payment of the plaintiffs' commission, which otherwise would have been due at the time of the execution of the agreement for the exchange, should be definitely stated, so that the payment should not be indefinitely postponed or subject to uncertainty. Under all the circumstances we think this clause was inserted for the purpose of fixing the time beyond which the plaintiffs were not called upon to wait, and not as a condition of payment.

The burden of getting the Antwerp Street estate was thrown upon the defendants, and they were bound in good faith to the plaintiffs to use all reasonable efforts to get it. By agreements between the defendants, who seem to have been always ready, and Jewell, who does not seem to have been ever ready, the time for carrying into effect the agreement for exchange was postponed from time to time until March 1, 1898, at which time Jewell endeavored to get another extension ; but the defendants refused to agree to it, and declined to hold themselves longer bound to Jewell under the contract, abandoned it, and have never since attempted to carry it out or enforce it.

Nor does it appear that Jewell has ever since made any attempt to carry it out. The agreement appears to have been of binding force upon both parties, and as neither party has attempted to enforce it, it must be regarded as in substance cancelled by mutual understanding.

The defendants have neglected to take reasonable means to get the Antwerp Street property, and so have become by their own voluntary conduct unable to carry out their contract with the plaintiffs. We think they cannot in this indirect manner do what they cannot directly do, namely, repudiate their contract; and it follows that there has been a breach for which the defendants can be held in the absence of any other defence.

But the defendants say there is another defence. They say that the plaintiffs while acting as their brokers made an agreement with Richards, then acting as broker for Jewell, that the brokers for the contracting parties should share equally the commissions obtained on both sides, and that this arrangement was not known to the defendants and was a fraud upon them.

Upon this the court found that the employment of the plaintiffs by the defendants was such as should have made them exclusively the representatives of the defendants' interests, and should have kept them free from any alliance with representatives of the other party to the contract which might subject the brokers on either side to temptation to act adversely to their clients' interests; that Jewell was represented by a broker who was employed in such a way as would ordinarily entitle him to a commission if an exchange was effected; and that the plaintiffs before effecting an exchange entered into an arrangement with Richards, the broker of Jewell, that the brokers for the contracting parties should share equally the commissions obtained on both sides. The court further found that neither the defendants nor Jewell had any knowledge of this arrangement.

The defence is based upon a claim of fraud, and the burden is on the defendants to show the fraud. The question on this branch of the case is whether this arrangement was such a fraud as to preclude a recovery in this suit.

The general rule is well established that when the individual interests of the broker in the transaction are antagonistic to those of his principal, no matter whether that antagonism arises out of the individual relation of the broker to the property as an owner or otherwise, or out of his connection with the opposing party, or in any other way directly connected with the transaction in which he is engaged as such broker, he is not in a situation to perform his full duty to his employer, and his failure to inform his employer of the fact is a fraud upon the latter; and in such case the plaintiff cannot recover a commission. Story, Agency, § 31. *Rupp* v. *Sampson*, 16 Gray, 398. *Farnsworth* v. *Hemmer*, 1 Allen, 494. *Walker* v. *Osgood*, 98 Mass. 348. *Smith* v. *Townsend*, 109 Mass. 500. *Rice* v. *Wood*, 113 Mass. 133. *Follansbee* v. *O'Reilly*, 135 Mass. 80. *Bell* v. *McConnell*, 37 Ohio St. 396. *Scribner* v. *Collar*, 40 Mich. 375.

A similar rule is applied where one as the representative of a public or private corporation undertakes to act in a matter where he has an adverse personal interest; and the principle is of very general application in other relations. Morawetz, Corp. § 517, and cases cited. *Holcomb* v. *Weaver*, 136 Mass. 265. *Boston* v. *Simmons*, 150 Mass. 461.

In a certain sense it is true that the interests of a broker whose commission is dependent upon a sale, especially where he is acting for the buyer and his commission is a given uniform percentage upon the purchase price, are never identical with those of his principal. Indeed, they are in these cases somewhat adverse. So far as the single transaction is concerned, it is for the pecuniary interest of the broker that a contract of sale should be made, even if the terms are not such as the interests of the principal require; and influenced by a desire to secure his commission, a broker may advise his principal to accept such terms when he would not otherwise so advise. And there can be no doubt that many a dishonest broker has consciously, and many an honest broker has unconsciously, yielded to this influence.

But this interest arises out of the nature of the contract of employment, and is known to the employer, who is therefore put upon his guard; and it does not disqualify the broker.

Whenever this defence of fraud is raised, it is always necessary to examine into the situation of the broker for the purpose of seeing whether, upon the evidence, it appears that his interests are adverse to those of his principal, or whether, in the language of the report in this case, he is subject " to temptation to act adversely to his client's interests." In many circumstances it has been decided that the interest of the broker is, as matter of law, adverse to that of his principal, as where he is acting for both sides; *Farnsworth* v. *Hemmer*, 1 Allen, 494; *Rice* v. *Wood*, 113 Mass. 133; *Bell* v. *McConnell*, 37 Ohio St. 396; *Scribner* v. *Collar*, 40 Mich. 375; or where he is interested in the trade, as where the broker of the seller had an agreement with the proposed buyer that the latter should let him have one of the lots sold. *Smith* v. *Townsend*, 109 Mass. 500. In the case at bar it does not appear that either broker was acting for both sides, or had assumed any obligation thus to act. The plaintiffs were under no duty whatever to Jewell, and were free to demand of him the

best possible terms for the defendants. Nor do we understand that the arrangement was such as to make the respective brokers partners, and so to bring the case within the principle upon which *Thwing* v. *Clifford*, 136 Mass. 482, was decided.

Nor does it appear whether the commissions of the respective brokers were to be lump sums or percentages, or whether they were to be equal in amount. Except the bald statement that the commissions were to be shared equally, we are left in the dark as to the terms of the arrangement.

It is easy to conceive of an arrangement between brokers for sharing the commissions which would put one of them under a temptation to act adversely to the interest of his client, and perhaps it is easier to conceive of such an arrangement than of one not having such an effect, but we are not prepared to say that necessarily, as matter of law, every arrangement between brokers to share commissions changes the relation they hold to their principals, either by putting them under an additional or different temptation than that arising out of the nature of the employment, or otherwise, and is therefore invalid.

In this case there was an exchange of property, and it is fair to assume that the property upon each side was substantially of the same value; and it does not appear that the commissions were unequal.

The defendants fail to show that upon the facts of this case either broker was placed by this arrangement in any better or worse condition than without it, or that in any way he was subjected to any other or different temptation to act adversely to the interests of the principal than that naturally and ordinarily arising out of the nature of his employment. A majority of the court think that there must be a decree for the plaintiffs for the sum of two hundred dollars and the value of the equity in the Antwerp Street estate. Unless the parties agree to that value the case must be sent to a master to find the amount due.

*Decree accordingly.*