[No. 8388.  Department Two.  January 8, 1910.]

ELZA DEAN et al., Respondents, v. WILLIAM B. WILLIAMS et
al., Appellants.[1]

FRAUDS, STATUTE OF—BROKERS' COMMISSIONS—STATUTES—RETRO-
ACTIVE EFFECT. Laws 1905, p. 110, requiring contracts for the pay-
ment of a broker's commission on the sale of real estate is not
retroactive and has no application to contracts made prior to its
enactment.

BROKERS—COMMISSIONS—CONTRACTS—PERFORMANCE—DEFENSES —
FAILURE OF TITLE. Brokers are entitled to their agreed commis-
sions as a matter of law, where they procured a binding contract
with a purchaser, able and willing to complete the deal, which
failed for defects in the title unknown to the brokers, although
there was testimony to the effect that the commission was to be
paid only out of the last payment and that the same was not to
be paid if the sale was not consummated; since the agreement did
not contemplate the failure of the sale by reason of the fault of
the grantors.

VENDOR AND PURCHASER—CONTRACTS—TITLE—MARKETABLE TITLE.
A contract to sell land with a perfect title satisfactory to the pur-
chaser only requires the furnishing of a good marketable title, and
does not give the purchaser an arbitrary right to defeat the sale.

Appeal from a judgment of the superior court for Yakima
county, Kauffman, J., entered June 20, 1908, upon the ver-
dict of a jury rendered in favor of the plaintiffs, by direction
of the court. Affirmed.

Henry J. Snively, for appellants.

Wende & Taylor, for respondents.

PARKER, J.—The respondents brought this action in the
superior court to recover commission claimed to be due them
from the appellants as compensation for the finding of a pur-
chaser for land of appellants. The questions arise upon the
sufficiency of the evidence introduced by appellants to sup-
port the affirmative defenses pleaded by them. At the con-
clusion of the trial, the court granted respondents' motion for

[1]Reported in 106 Pac. 130.

a directed verdict, and rendered judgment accordingly, in favor of respondents and against appellants for the amount of the commission as prayed for in the complaint.

The correctness of the trial court's disposition of the cause can be determined from certain facts in the record which are either undisputed or established beyond controversy, as follows: In the fall and winter of 1904-1905, the respondents were engaged in business as partners, as real estate agents and brokers, at Sunnyside, in Yakima county; the appellants being then the owners of forty acres of land near there. In November, 1904, it was orally agreed between appellants and respondents that, if the latter would find a purchaser for the land at $140 per acre, making $5,600 in all, with a cash payment of $2,000, the balance to be paid on terms satisfactory to appellants, the respondents should receive a commission of five per cent on the purchase price. In pursuance of this agreement, respondents induced R. G. Page to become interested in the purchase of the land, which resulted in appellants and Page entering into a written contract for the sale of the land on February 22, 1905, by which Page paid $500 cash, and was to pay $2,300 on November 1, 1905, at which time a deed was to be given and the balance of $2,800 to be then secured by a mortgage upon the land payable on or before three years. The contract between appellants and Page for the purchase of the land was drawn up by one of the respondents in their office, and contained a provision in substance that an abstract should be furnished by appellants, showing perfect title, satisfactory to Page. It will be noticed that the sale was not consummated upon the exact terms at which it was placed in the hands of respondents, the cash payment as finally agreed upon and made being $500 instead of $2,000. It is claimed by appellants that, upon the making of this concession on their part, it was agreed between them and respondents that the commission was not to be paid out of the $500, but that it was to be paid when the deal was completed on November

1, and also that no commission was to be paid if for any reason the deal should not be completed by deed and mortgage on November 1, 1905, as agreed. We will take the statements of the appellants as showing the terms of this contract, though they are to a considerable extent disputed, for the purpose of determining the right of respondents to their commission, upon the failure of the deal. Appellant W. B. Williams testified:

"Q. What was said there, if anything, further between you and Dean and Woods about the commission? A. Well, I told him I would not pay the commission until the fall payment. . . , Q. What was the agreement about that? A. Finally Mr. Woods I think mentioned about drawing an order on Mr. Page if it was satisfactory to him if I would sign it—I and my wife, and I objected to sign it because I was afraid it would come back on me. He said, 'We will draw the order to apply on the contract and if the contract is busted it will sure let you out.' . . . Q. Did Mr. Woods draw up this contract? A. Yes, sir. Q. What was the arrangement between you and them now as to this commission if the contract was not carried out and the payment of $2,300 made? A. There would be no sale. If the contract is busted it will let you out. Q. Of what? A. Of paying any commission. Q. That is there was no commission if the contract was not carried out? A. That is the way I understood it. . . . Q. Did that have any effect upon you signing this contract, that is Mr. Woods' statement that if the contract was not carried out, if it was busted that you would not have to pay any commission. A. It surely would. I did not want to pay any commission out of $500. . . . A. He wanted to know if I would give an order. Q. Order for what? A. For the commission. I told him I would under the condition that it was not to be paid unless the deal went through. . . . Q. You had however previous to that time accepted $500 on it, had not you? A. I had accepted 500 dollars."

Appellant Mary B. Williams testified:

"Q. Did you ever hear the plaintiffs, or either one of them say anything in relation to the payment of the commission on this deal? A. Yes, sir. Q. Now tell the jury, and speak so that they can hear it, what you heard in that connection. A.

They brought out that order for me to sign on Mr. Page, the $280. Mr. Dean and Mr. Woods was not to draw any commission unless the deal went through. Q. Did they bring it out together? A. Yes, sir. Q. And Dean and Woods, they both were together in the house? A. Yes, sir. Q. What was the talk about the commission? A. He made the remark, Mr. Williams, if the deal did not go through he should not get any commission. Q. They agreed to it? A. Yes, sir."

This testimony gives a version of how the payment of the commission was to be affected by a failure of the deal as favorable to appellants' contention as can be drawn from the record. At the time of executing the contract of purchase with Page, or soon thereafter, the appellants signed and gave to respondent an order on Page for the commission, $280, requesting Page to pay respondents that amount and charge the same to appellants on the contract price. Until after this time, respondents had no knowledge of any defect in appellants' title to the land, nor did Page have any such knowledge, all parties assuming the sale would be consummated. An abstract was furnished Page in compliance with the contract of purchase, and as admitted in appellants' answer, "said title was clouded and unsatisfactory to said Page and that said Page refused to complete said purchase and demanded and received under said contract the earnest payment of five hundred dollars." The undisputed testimony of Page is to the effect that the only reason the contract failed of performance was the imperfect title. It is also evident that Page was willing and able to perform his part of the contract if appellants would give him good title. What then was the agreement as to the effect of a possible failure of the purchase contract upon the right of respondents to their commission? Reduced to its simplest terms, the commission contract was that the commission was not to be paid unless the deal went through. This, in substance, is the principal affirmative defense. The other affirmative defense is the statute of frauds.

Referring first to the defense that this contract for payment of commission is void because not in writing, learned

counsel for appellants contend it is void under Laws of 1905, p. 110, which requires such contracts to be in writing. That law, however, was not passed until after the making of this contract, and it hardly needs citation of authority to show that such a statute is not retroactive. 20 Cyc. 281. Our attention is not called to any authority in support of counsel's contention, which seems to be, because the contract is sought to be enforced after the enactment of the statute, it is therefore required to have been in writing.

The principal contention of learned counsel for appellants, is that since there was a failure in the performance of the contract of purchase, the respondents' right to commission also failed; the argument being that the latter was wholly dependent on the former no matter what the cause of such failure was, whether it be the fault of the appellants or not. It is plain that the failure of the purchase was in no sense the result of any failure of full performance of the agency and commission agreement on the part of respondents. They fully completed their work to the last detail. They secured a purchaser ready and willing to purchase upon terms satisfactory to appellants. They did not cease their efforts in the interest of appellants until they had secured the entering into of a valid binding written contract for the purchase of the land, between Page and appellants. There was absolutely nothing more for them to do. So far as they are concerned, the sale was complete because they had carried the negotiations to that point where Page and appellants were legally bound to each other in writing. At that point their service was completed. It is also plain that the failure of the fulfilling of the contract of purchase was not by reason of any unwillingness on the part of Page to do all he was legally required to do under its terms. His refusal to accept the deed and pay the balance of purchase price in cash and by mortgage, as agreed, was solely the result of the failure of appellants to give him good title as agreed. The cause then of the failure of the consummation of the deal, was neither

attributable to respondent, nor to Page, as to anything either was legally required to do; but was wholly the fault of appellants themselves in failing to do the things they agreed to do, to wit, convey the land and furnish good title, which respondents had a right to assume appellants could do at all times while they were endeavoring to bring about the sale, and of which they knew nothing to the contrary until after their work was completed.

The question then arises, Is this cause of the failure. of the purchase such as to defeat respondents' right to their compensation? It may be that the literal terms of the commission agreement, as testified to by appellants, would seem to negative respondents' right, but such a construction would make it an agreement within the sole power of appellants to perform or not; that is, they could cause the failure of the purchase contract by any means they choose, and then say to the respondents: "The purchase not being consummated your commission is not payable, since it depends upon such consummation, notwithstanding you have fully performed the service, and secured a binding written contract for the sale, and notwithstanding the purchaser is able and willing to perform if we will give him good title." This would be in effect construing the agreement out of existence; for a contract not binding on both parties is no contract. Clearly such is not the legal result of this agreement. We think that, while the agreement contemplated the possible failure of the sale, it did not contemplate that a failure of the sale by reason of the fault of the appellants should defeat respondents' right to their compensation.

In the case of *Gauthier v. West*, 45 Minn. 192, 47 N. W. 656, it was claimed that the commission was not to be paid until the property was transferred by deed, which had not been done at the commencement of action on account of an alleged flaw in the title, to remove which an action had been commenced. The trial court in effect directed a verdict as in this case, except it left to the jury the sole question of the

amount, which was there in dispute, but which is not here. Upon a review of that case the supreme court, in affirming the trial court said:

"Conceding the contract to have been as defendant claims, the plaintiffs, having no knowledge of any defect in the title, were not obliged to wait for the amount due as their compensation until defendant's title was perfected. The default was with him, and not with the plaintiffs, for they had fully performed by producing the ready, willing, and able purchaser. In making their contract, and in producing a customer for the property, they had acted upon the assumption, as they had a right to do, that the defendant could tender a title free from infirmity. Even if it was agreed between the parties that plaintiffs were to wait for their compensation until the sale was fully completed, there was an implied contract that the defendant had the ability and could confer upon the purchaser a perfect title to the property. *Hamlin v. Schulte,* 34 Minn. 534, 27 N. W. 301, and cases cited; *Peet v. Sherwood,* 43 Minn. 447, 45 N. W. 859, and cases cited."

See, also, *Berg v. San Antonio St. R. Co.,* 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929; *Alvord v. Cook,* 174 Mass. 120, 54 N. E. 499; *McDermott v. Mahoney,* 139 Iowa 292, 115 N. W. 33; *Peach River Lumber Co. v. Montgomery,* (Tex. Civ. App.), 115 S. W. 87; *Parker v. Walker,* 86 Tenn. 566, 8 S. W. 391; *Yoder v. Randol,* 16 Okl. 308, 83 Pac. 537, 3 L. R. A. (N. S.) 576, and note. See note in 43 L. R. A. 609 (*Brackenridge v. Claridge & Payne,* 91 Tex. 527, 44 S. W. 819).

It is argued, in effect, by learned counsel for appellants, that since the purchase contract provided that the title should be satisfactory to Page, he had the right to avoid the contract even if the title was perfect, and hence, respondents' right to commission must be determined as if Page had said the title was not satisfactory to him, regardless of whether it was in fact perfect or not. If Page had such an arbitrary right to avoid the purchase under the contract, since respondents had procured and knew the terms of the contract, it is

possible their right to commission might be defeated by such
an arbitrary action on the part of Page; but we do not think
Page had any such arbitrary right. As we have seen, the
contract was that the title should be perfect and satisfactory
to Page. This we think means only that the appellants
should furnish a good marketable title. As was said in
*Roberts v. Kimmons*, 65 Miss. 332, 3 South. 736:

"The condition in the written contract in regard to the
title being made clear and satisfactory to the purchaser, be-
fore the sale was to be concluded, was nothing more than the
law and good faith implied, to wit, that the purchaser should
get a title free from valid objections. *Folliard v. Wallace*,
2 Johnston 395; *Middleton v. Findla*, 25 Cal. 76. The pur-
chaser would have been entitled to this without any such stip-
ulation in the contract, unless it had been shown that he
agreed to take the risk of the title."

See, also, *Ross v. Smiley*, 18 Colo. App. 204, 70 Pac. 766;
*Moot v. Business Men's Inv. Ass'n*, 157 N. Y. 201, 52 N. E.
1, 45 L. R. A. 666. These observations, however, hardly
seem necessary in view of Page's readiness, willingness and
ability to consummate the sale if appellants would give him
a good title as they agreed to.

Appellants' counsel cite the case of *Seattle Land Co. v.
Day*, 2 Wash. 451, 27 Pac. 74, in support of his contentions.
We do not regard that case in point here. There were ques-
tions of disputed fact in that case on which the jury found
in favor of defendant. There are remarks on page 456 of
that decision in harmony with the views expressed in this
opinion, though these questions of law are not there reviewed,
nor are there any citation of authorities therein.

We are of the opinion that the learned trial court cor-
rectly held that appellants failed to prove their affirmative
defenses sufficient for submission to the jury, and the ad-
mitted facts as to the commission contract and the service
rendered thereunder put the respondents' case beyond con-
troversy. The judgment is affirmed.

RUDKIN, C. J., CROW, MOUNT, and DUNBAR, JJ., concur.