McLANE v. PETTY.

(Court of Civil Appeals of Texas. San Antonio. June 18, 1913. Rehearing Denied Oct. 15, 1913.)

1. VENDOR AND PURCHASER (§ 130*)—CONTRACT — MERCHANTABLE TITLE — LIMITATIONS.

Where a contract for the sale of real property required the vendor to convey by deed with covenants of general warranty certain real property in controversy, and prior to completing the sale to deliver an abstract showing a good merchantable title, the vendor was bound to tender a good record title, and could not compel the vendee to accept a title good by limitations only.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245–247; Dec. Dig. § 130.*]

2. SPECIFIC PERFORMANCE (§ 59*) — CONDITIONS IN CONTRACTS—EFFECT.

A contract by which the vendor agreed to convey by warranty deed certain described real property, for which the vendee agreed to pay $3,200, of which $50 had been deposited in escrow as earnest money, to be applied on the price on consummation of the sale, and if it should not be consummated to be returned to the vendee, was a binding obligation, on which either of the parties might have maintained a suit for specific performance or damages; the agreement that the earnest money should be returned on failure to consummate the deal not being one for liquidated damages.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 181; Dec. Dig. § 59.*]

3. BROKERS (§ 49*)—CONTRACT OF SALE—SPECIFIC PERFORMANCE — RIGHT TO COMMISSIONS.

Where a failure to consummate a sale of real property negotiated by a broker was caused solely by the vendor's default, and his right to compel specific performance would have been complete the moment he tendered the vendee a good record title to the property, and the vendee was ready, able, and willing to buy at the price specified, the broker had completed his services and was entitled to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

4. BROKERS (§ 63*)—COMMISSIONS—COMPLETION OF SALE—VENDOR'S DEFAULT—EFFECT.

Where a broker for the sale of certain real property procured a valid, enforceable contract from a purchaser able and willing to take the property on the terms specified, but the vendor refused to convey because he could only furnish a title good by limitations to a small strip of the property, which the vendee would not accept, that the broker had orally agreed that the vendor should not be liable for commissions unless the sale was consummated was no defense to the broker's right to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. § 63.*]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by John McLane against J. D. Petty. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

C. C. Harris, O. M. Fitzhugh, and McCollum Burnett, all of San Antonio, for appellant.

TALIAFERRO, J. This was an action for commission, claimed to have been earned by appellant as a real estate broker for finding a purchaser for a piece of real estate belonging to the appellee.

Conclusions of Fact.

Appellant, who was engaged in the real estate business in San Antonio, approached appellee with reference to the sale of the

property in question and asked at what price he would sell it. Appellee knew that appellant was a real estate broker, and agreed to sell the land for $3,500 if appellant found a purchaser at that price, and pay the appellant 5 per cent. commission thereon. Appellant returned to appellee a few days later, and told him that the proposed purchaser, whom he had found, would not pay $3,500, but that he had made an offer of $3,250. Appellee requested appellant to bring his purchaser around to talk to him. Soon afterward appellant introduced Mr. Gersdorff to appellee as the proposed purchaser. The three together discussed the matter for some time, and finally the appellee agreed to sell, and Gersdorff agreed to buy, at $3,250 cash; Gersdorff then and there depositing with the attorney $50 earnest money. This was June 18, 1912. Gersdorff then demanded a survey of the property, which was agreed to, and on the following morning, the 19th, a surveyor was employed at the joint expense of Gersdorff and appellee, and a survey made. After the survey was made the parties entered into the following written contract:

"State of Texas, County of Bexar.

"This agreement by J. D. Petty, hereinafter styled party of first part, and Chas. Gersdorff, hereinafter styled party of second part, all residents of Bexar county, Texas, witnesseth:

"1. Party of first part agrees to sell and convey to party of second part, by warranty deed with covenants of general warranty, the following described property, situated in San Antonio, Bexar county, Texas: Beginning at a stake on the east side of San Marcos street, 299 feet from the intersection of south side of Lake View avenue and the east side of San Marcos street, at corner of fence, for the N. W. corner of this lot; thence with the east side of San Marcos street in a southerly direction 78.5 feet, to corner of fence, for the S. W. corner of this lot; thence in an easterly direction 166.8 feet to stake at corner of fence, for the S. E. corner of this lot; thence in a northerly direction with fence 78.5 feet to corner of same, for the N. E. corner of this lot; thence in a westerly direction with fence 166.8 feet, to the place of beginning.

"2. Party of the second part agrees to pay to party of first part for the above-described property the sum of $3,250, as total consideration, cash. Party of second part has this day deposited with Gilbert C. Storms the sum of $50 as earnest money to bind this trade, same to be held by said Storms in escrow. Upon consummation of this deal said $50 is to be applied as part of the purchase price above stated. Should this sale not be consummated for any reason whatever, it is agreed and understood that the $50 paid shall be returned to party of second part.

"Party of first part agrees to furnish party of second part an abstract of title to above-mentioned property, brought down to date, said abstract to be delivered within five days from this date, and showing good, merchantable title to said above-mentioned property in party of first part. It is further agreed and understood that party of second part is to pay city taxes on said property for fiscal year beginning June 1, 1912; taxes due state and county for year 1912 to be prorated. Party of first part also agrees to furnish party of second part, within five days from date hereof, a tax statement showing condition of taxes on said property due state and county and city. Water rent on said property to be paid to date of conveyance by party of first part. Insurance on the buildings on said lot to be transferred to party of second part by party of first part and to be prorated.

"Time being the essence of this contract, this deal is to be consummated not later than June 24, 1912.

"It is further agreed that party of first part is to pay to John McLane the sum of $150 as commission, said sum to be paid out of the purchase price above mentioned, and said John McLane hereby accepts the same as full for all commissions due him by said party of first part by reason of said sale.

"Signed in duplicate this June 19, 1912, each of which is in all respects deemed an original.

"[Signed] J. D. Petty,
"Party of First Part.
"[Signed] Chas. Gersdorff,
"Party of Second Part.
"[Signed] John McLane, Agent."

At the time the survey was made Gersdorff and appellee both knew that the legal title to nine feet of the land described in the survey was in the International & Great Northern Railway Company, but so far as the evidence shows appellant did not know it. Gersdorff was ready, able, and willing to buy the land described in the contract of sale at the time and upon the terms specified. Appellant furnished the abstract at the time agreed, and it was duly examined by Gersdorff's attorney. Upon examination of the abstract the attorney advised appellee that the same did not reveal a "good, merchantable title" in him for the whole lot, but showed that the record title to about nine feet thereof, fronting on San Marcos street and extending back the depth of the property, was in the International & Great Northern Railway Company, and asked appellant to obtain a quitclaim deed from the railway company. Appellee refused to get or try to get the quitclaim from the railway company. He offered to sell the 68.5 feet, title to which was admitted to be good in him. He also offered to make a warranty deed to the whole lot. Gersdorff refused to buy less than the whole lot, and while he admitted that appellee prob-

.ably had title to the nine feet by limitation, he demanded a record title under his contract. Appellee then declared the sale off, and instructed the attorney to return the $50 ·earnest money.

### Conclusions of Law.

[1] By the terms of the contract of sale appellee, Petty, was bound to furnish Gersdorff, the proposed purchaser, a good record title, and could not require him to accept .a title good by limitation only. Nicholson v. Lieber, 153 S. W. 641; McLaughlin v. Brown, 126 S. Wt. 292; Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561; Stillman v. Canales, 25 Tex. 313, 78 Am. Dec. 530.

[2, 3] The contract of sale was a complete .and binding obligation between the appellee and Gersdorff, upon which either could have maintained a suit for specific performance. The stipulation that the $50 earnest money should be returned to Gersdorff in event the sale should for any cause not be ·consummated, was not an agreement for liquidated damages, and did not deprive ·Gersdorff of his right of action for a specific performance, or for damages. Hamburger & Dreyling v. Thomas, 118 S. W. 770. The failure to consummate the sale was caused solely by the default of the appellee in not ·complying with his contract, and his right to compel specific performance .would have been complete the moment he tendered Gersdorff a good record title to the whole of the property covered by the contract.

When the appellant found and presented ·to Petty a purchaser for the property, who was ready, able, and willing to buy the same .at the price and upon the terms demanded for it,· and who had actually entered into .a binding contract in writing with Petty to purchase the property, he had fully performed his contract, and was entitled· to his compensation. In so far as he was con-·cerned, the contract was then executed. ·Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117; Gillespie v. Dick, 111 S. W. 664; Hamburger & Dreyling v. Thomas, supra; Cheek v. Nicholson, 133 S. W. 707.

[4] It is immaterial whether, as contended by the appellee, he had agreed with appellant that no commissions should be paid unless the sale was finally and actually consummated, and the money paid by Gersdorff. The uncontradicted evidence shows that the failure to consummate the sale was due to the default of the appellee, without any fault on the part of appellant, and the appellee will not be permitted to hide behind his own wrong and deprive appellant of the fruits of his labor by pleading his own dereliction. We expressly refrain from passing upon the question of whether the contract between appellant and appellee was so ambiguous as to require construction, or whether the court erred in permitting appellee to testify with reference to verbal agreements varying or explaining the terms of the written contract, because under no circumstances will a contract be construed so as to protect one of the parties in the perpetration of a willful wrong upon the rights of the other, unless the terms of the agreement very specifically reveal that intent. Whatever the transactions between the parties in this case may have been, in the absence of an express agreement to that effect, it will be presumed that the appellant did not agree that appellee should have the right to deprive him of his earned compensation by his own willful wrong or captious refusal to abide the plain terms of his written agreement to sell his land. The trial court upon the evidence should have granted appellant's motion for an instructed verdict.

The judgment of the lower court is therefore reversed, and judgment here rendered for the appellant.