## PRESTON v. POSTEL et al.

(District Court, S. D. Texas, Houston Division. June 28, 1922.)

No. 356.

1. **Brokers ☞61(1)—Implied warranty by owner that title is good to property broker is employed to sell.**

When property is placed in the hands of a broker for sale, there is an implied warranty by the owner that the title is good, and if the trade is not consummated on that account the commission can be recovered, in the absence of knowledge of the defect by the broker at the time the purchaser was secured.

2. **Brokers ☞52—Contract may stipulate that commission is not to be paid unless the trade is concluded in fact.**

A brokerage contract may stipulate that commission is not to be paid unless the trade is concluded in fact, and where that intention is manifest, no commission is recoverable if the transaction is not completed.

3. **Brokers ☞63(1)—Owner cannot defeat broker's right to commission by his own default.**

When through the instrumentality of a broker a contract of sale, satisfactory to both parties, has been made between an owner and purchaser, the commission is recoverable, even though the sale was never consummated, if the failure was due to the fault or arbitrary action of the owner, in respect to some obligation or duty he assumed.

4. **Brokers ☞61(2)—Broker held entitled to commission, though sale was not consummated.**

Plaintiff acted as broker for sale of lands of defendants, and after a contract of sale had been made the parties entered into a contract providing for payment of a stated commission to plaintiff, which was also to be in settlement of his claim for prior services. The contract provided that the commission should be paid as soon as the sale was consummated, and defendants received payment for the land; but, if it should not be consummated by reason of failure of the purchaser to take the land, nothing should be paid, and there should be no liability. In the contract of sale defendants bound themselves to use their best efforts to perfect title to the land, if found defective, within a time limited. Both plaintiff and defendants knew that streets had once been laid out on a part of the land and dedicated to the public, which constituted a defect in the title, but one which could be removed by reasonable effort. *Held,* that, where defendants took no action to cure such defect within the time limited, refusal of the purchaser to consummate the purchase solely because of such defect of title did not defeat plaintiff's right to the agreed commission.

At Law. Action by C. S. Preston against Julius Postel and another. Judgment for plaintiff.

Baker, Botts, Parker & Garwood and Cole, Cole & O'Connor, all of Houston, Tex. (Robert L. Cole and Rodman S. Cosby, both of Houston, Tex., of counsel), for plaintiff.

L. B. Moody and Ed S. Phelps, both of Houston, Tex., for defendants.

ESTES, District Judge. The plaintiff in this case is a real estate agent or broker in Houston, and the defendants are the owners of a tract of land containing something more than 1,800 acres, located near that city, and referred to in the testimony as the "Deer Park tract."

As early as 1915 the plaintiff had been in communication with the defendants respecting the sale of the said property. On August 1st of that year he obtained an option for a period of 30 days to buy or sell the land, but nothing appears to have been accomplished by him at that time. No further communications passed until February 12, 1919, when the defendants, in response to a request from the plaintiff for a price or an option, expressed a willingness to accept $400,000 for the property. "The price above stated is net to us, and your commission would have to be added on to this selling price."

When acknowledging this communication, the plaintiff requested the defendants to give him an exclusive right to sell, or something in the nature of an option, for a period of 90 days, in view of the expense incident to the advertisement and exploitation of the property and the necessity of disposing of the tract in parcels, or to more than one purchaser. No reply was made to this request, and no further negotiations or correspondence is shown until October 26, 1919, when the plaintiff wired the defendant Julius Postel, who had in charge the property for both of the defendants, that he would show the tract to a prospective purchaser on the following day; and asked whether a lower price than that named in the letter of February 18th would be considered. This message was answered to the effect that the defendants were expecting to be in Houston during the early part of November, and would not fix a price before that time.

Prior to the receipt of this communication, the plaintiff had executed a written contract with a representative of an Oklahoma oil company for the sale of this property for $425,000 in cash, $400,000 of which, under the terms of the February letter, was to be paid to the defendants. To secure this trade, $10,000 was placed in escrow with a Houston bank by the prospective purchaser, pending the formalities incident to the consummation of the deal. The defendants were requested to confirm this arrangement, but they declined to do so, and at once repudiated the authority of the plaintiff to bind them in the premises. They stated, however, that they would be in Houston during the first week in November, and that that was "the best can do under circumstances." The plaintiff thereafter saw the defendants at their home in Illinois, and personally undertook, but without success, to induce them to ratify the contract he had made. At that time he insisted that under the circumstances the defendants should pay him the amount of the commission, to wit, $25,000, and the defendants denied or disclaimed any obligation to him.

But they separated with the understanding that the defendants would go to Houston, and, after acquainting themselves with values, would determine what should be done. About November 1st they went to Houston, made some investigation, and met, through the plaintiff, the representative of the oil company with whom the plaintiff had previously contracted. On the 8th of November they concluded a contract with him, and also with the plaintiff, by the terms of which they agreed to sell, under the conditions set forth in the contract, to E. W. Marland, who was the president of the oil company and presumably acting for it, the property in question for $525,000, and to pay to the

plaintiff herein, under certain conditions set out in the contract with him, a commission of $25,000.

The transactions or negotiations preceding the execution of these contracts are important only to the extent that they show the relationship beween the parties, and that prior to the execution of them a controversy existed respecting the right of the plaintiff to a commission or fee. The trade with Marland was never consummated, but the plaintiff claims that, notwithstanding that fact, he is entitled to the commission under the provisions of the contract made with him, and referred to above, and this suit is for the recovery of same.

Before the acquisition of this property by the defendants, a portion of it had been subdivided into lots and blocks, with streets and alleys dedicated to the public use, and at least one of the blocks thus designated had been disposed of. This fact was known to the plaintiff at the time he conducted negotiations for the sale of the property. The evidence is that, before either of the contracts was executed, a representative of the prospective purchaser called attention to the designation on the map of a town site, and made it plain that the subdivision into lots and blocks of that portion of the tract where the town site was located would make the property unfit for the uses for which it was designed by him. At that time he was advised by a representative of the plaintiff that all difficulty in that regard could be removed.

The contract for the purchase of this property was made with E. W. Marland, acting through Chester H. Westfall as his agent. It is rather an elaborate document, which it is unnecessary to quote in full. The features of it that are of consequence here are an agreement (a) that the defendants would sell, and Marland would buy, the entire tract, deducting from same "block 39 of Deer Park town site and the right of way of the G., H. & S. A. Railroad"; (b) that the consideration was to be $525,000 in cash; (c) that the defendants should have 10 days from the date of the contract within which to complete and present to the purchaser an abstract of the title, and that the purchaser would cause the abstract to be examined by his attorneys, and objections reported, within 30 days thereafter; (d) that, if the attorneys reported a good and merchantable title in fee simple in the defendants, the purchaser should have until January 25 within which to "take and pay for said property as herein provided," but that, if the abstract did not, in the opinion of the attorneys for the purchaser, show a good and merchantable title in fee simple in the defendants, the latter should have until January 15, 1920, within which to "perfect said title, so as to make it a good and merchantable title in fee simple, and they bind themselves to use their best efforts to perfect said title to said property within said time"; (e) that a deposit of $10,000 would be placed in escrow by the purchaser with a Houston bank, with the stipulation that, in the event the sale was carried out, such deposit should be applied in part payment of the purchase money of the property, but if in the opinion of the attorneys a good and merchantable title was tendered by the defendants within the time specified, and the "party of the second part, fails to take and pay for the property as herein provided," the $10,000 should be forfeited and paid over to them by the

bank as "liquidated damages, and this contract shall be null and void, and all parties herein named released from any liability hereunder"; (f) that if, on the other hand, the abstracts of title showed that the defendants did not have a merchantable title, and were unable or failed to cure the defects within the time designated, "then the money deposited in escrow shall be returned to the party of the second part, and this contract shall be null and void and all parties released."

After this contract had been executed, the defendants made an agreement with the plaintiff, as follows:

"First. That whereas, said Julius Postel and Philip Postel have this day contracted to sell to E. W. Marland or his assigns that certain tract of land containing 1,824.32 acres, more or less, situated in Harris county, Texas, known as Deer Park tract, and being more fully described in deed from J. C. Hutcheson to George Postel and Philip H. Postel, Jr., dated February 23, A. D. 1906, recorded in volume 182, pages 425–427, of Deed Records of Harris county, Texas, herein referred to and made a part hereof, for more complete description of said land; and whereas, said C. S. Preston found purchaser to whom said Postels have contracted to sell said land:

"Second. Therefore said Julius Postel and Philip H. Postel, III, hereby agree that, as soon as said sale to said land shall have been consummated and they shall have received the full cash consideration for the same, then and thereupon they will pay to said C. S. Preston the sum of twenty-five thousand dollars ($25,000.00) in cash, in full settlement of and for any and all services rendered and to be rendered by him, in the premises; but if said sale shall not be consummated, by reason of proposed purchaser aforesaid failing to take said land, then nothing shall be paid by said Julius and Philip H. Postel to said Preston, and there shall be no liability on their part to him, whatsoever.

"Third. Said C. S. Preston hereby agrees to assist in any way that he can to consummate the proposed sale of said land to said proposed purchaser, and to accept said sum of $25,000 cash upon final consummation of said sale as above mentioned, in full payment and settlement for any and all services rendered and to be rendered by him, in the premises; but, if said sale shall not be consummated, as aforesaid, then nothing shall be paid to said Preston by said Julius and Philip H. Postel, III, and there shall be no liability whatsoever on their part to him."

The attorneys who examined the abstract for the prospective purchaser reported a number of defects in the title, among them the dedication of streets and alleys in this Deer Park town site. The objections made were in my opinion either remedied, or were, apart from the defect relating to the town site, not sufficient, to cause the title to be "unmerchantable or defective," as the parties employed that term in the contract. Under the provisions of the Texas statute, if the requisite facts were shown to exist, this dedication could have been set aside within the period of time set up in the contract for the title to be put into merchantable shape. Session Acts 36th Leg. p. 160 (Vernon's Ann. Civ. St. Supp. 1922, arts. 7587a–7587e). But steps to that end were not taken until the following July.

In the meantime, and after the date named in the contract for curing the objections had passed, the purchaser declined to proceed further, and sought to have the money placed in escrow returned to him. A controversy developed relative to the proper disposition of the fund, and a suit resulted. The judgment in the case appears to have been entered by agreement, the defendants receiving $1,000 and the pur-

chaser $9,000 of the deposit, with the result that not much assistance, as regards the controversy here, is to be gotten from the incident. It was conceded during the trial that, if the objections to the title set up in the opinion of the attorneys had been cured or removed, Marland would have elected to purchase the property, and that he was able to pay for it.

In the state of affairs thus outlined, the plaintiff alleges, among other things, that by the provisions of the contract made by the defendants with him he should recover the commission, because the failure to conclude the contract with Marland was due to the derelictions of the defendants respecting the obligations they had undertaken with him; in other words, that the reason the contract was not consummated was, not that Marland failed to buy the property and pay for it, but that the defendants failed to do what they had agreed to do in the contract with him. The defendants, on the other hand, take the position that, under the terms of the contract with the plaintiff, they were under no obligation to pay the commission, except in the event the trade was concluded and the money actually paid.

[1, 2] It is well established that, when property is placed in the hands of an agent, there is an implied warranty on the part of the owner that the title is good (Gauthier v. West, 45 Minn. 192, 47 N. W. 656; Colvin v. Mortgage Co., 225 N. Y. 510, 122 N. E. 454), and, if the trade is not consummated on that account, the commission can be recovered, in the absence of knowledge of the defect on the part of the broker at the time the purchaser was secured (Craft Realty Co., v. Livernash, 27 Colo. App. 1, 146 Pac. 121; Clark v. Battaglia, 47 Pa. Super. Ct. 290). The brokerage contract may stipulate that commissions are not to be paid unless the trade is concluded in fact (4 R. C. L. 313), and, where that intention is manifest, no recovery can be had if the transaction is not completed (Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Colvin v. Mortgage Co., supra).

[3] It is also well settled that when, through the instrumentality of the broker, a contract of sale, satisfactory to both parties, has been concluded between an owner and purchaser, the commission is recoverable, even though the sale was never consummated, if the failure to trade was due to the fault or arbitrary action of the owner in respect of some obligation or duty that he assumed in connection with the transaction. McLane v. Petty (Tex. Civ. App.) 159 S. W. 891; Dean v. Williams, 56 Wash. 614, 106 Pac. 130; Alvord v. Cook, 174 Mass. 120, 54 N. E. 499; 4 R. C. L. 311. Many cases have been cited where transactions similar to this were before the courts, and in some instances the verbiage of the contracts was strikingly like that employed by the parties here. It has been held that commissions can be recovered, though the sale of the property was not in fact concluded, when the contract provided that the commission was to be paid "if the trade went through" (Fawver v. Fullingim (Tex. Civ. App.) 149 S. W. 746); "to be paid out of the purchase price" (McLane v. Petty, supra); "the commission to be paid you in cash as received from the parties to whom you may sell the bonds" (Berg v. San Antonio Co., 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929); "when the con-

tract with Jewell is carried into effect" (Alvord v. Cook, supra); "upon the consummation of the sale" (Clark v. Battaglia, supra); "out of the purchase money" (Cheatham v. Yarbrough, 90 Tenn. 77, 15 S. W. 1076). On the other hand, it has been held that the commission cannot be recovered when the contract provided that "the compensation shall not be paid until after $5,000 has been received on account of the sale" (Clark v. Hovey, 217 Mass. 485, 105 N. E. 222); that if "the title was not good there was to be no sale" (Condict v. Cowdrey, 139 N. Y. 273, 34 N. E. 781); and that 25 cents per acre was to be paid for all lands "actually taken over and paid for" (Wilson v. Rafter, 188 Mo. App. 356, 174 S. W. 137).

[4] In all of these decisions the effort was to ascertain the intention of the parties to the immediate transaction, and it thus becomes manifest that, after all, every case of this character must rest upon the particular facts disclosed. The determining factor is what the parties agreed to do, and this controversy, therefore, in its last analysis, involves merely a construction of the contract under consideration—the task of determining the intention of the parties to it.

It is obvious that the contract with the plaintiff had reference to the contract with Marland. It also comprehended a settlement of existing controversies and differences between the parties respecting the question of whether a fee or commission was due for services rendered prior to the time such contract was concluded. Twenty-five thousand dollars was to be paid the plaintiff "in full settlement of any and all services rendered and to be rendered by him in the premises." It was to be paid "as soon as said sale of said land shall have been consummated, and they shall have received the full cash consideration for same, * * * but if said sale shall not be consummated by reason of the proposed purchaser aforesaid failing to take said land, then nothing shall be paid * * * to said Preston, and there shall be no liability * * * to him whatsoever."

These quotations, together with the clause in the third paragraph, which but reiterates preceding sentence, "but if said sale shall not be consummated as aforesaid, then nothing shall be paid to the said Preston * * * and there shall be no liability whatsoever to him," seem to me to demonstrate very clearly that the parties in question had in mind that the plaintiff would receive the commission only in the event the contemplated contract with Marland was consummated in accordance with its provisions and the sum of $525,000 was received by the defendants. If defects were shown to exist in the title that could not be cured by reasonable efforts within the time set forth in the Marland contract, or if Marland were to decide to pay the liquidated damages instead of purchasing the property, or even if the sale should not be concluded for any reason that was due to the fault of the proposed purchaser, the obligation to pay this commission would not exist. But I think it was also contemplated that the obligations assumed by the defendants in the Marland contract would be discharged by them. The obviously fine character and qualities of the defendants would alone make any other hypothesis impossible; and if the sale to Marland was not concluded and the money was not paid as a consequence

of the fault or derelictions of the defendants in respect of the obligations they assumed under that instrument, then it would violate the plainest principles of fairness and justice to hold that the plaintiff should bear the loss thus occasioned. As said by the court in Dean v. Williams, supra:

"It may be that the literal terms of the commission agreement, as testified to by appellants, would seem to negative respondents' right, but such a construction would make it an agreement within the sole power of appellants to perform or not; that is, they could cause the failure of the purchase contract by any means they chose, and then say to the respondents: 'The purchase not being consummated, your commission is not payable, since it depends upon such consummation, notwithstanding you· have fully performed the service, and secured a binding written contract for the sale, and notwithstanding the purchaser is able and willing to perform, if we will give him good title.' This would be in effect construing the agreement out of existence, for a contract not binding on both parties is no contract. Clearly such is not the legal result of this agreement. We think that, while the agreement contemplated the possible failure of the sale, it did not contemplate that a failure of the sale by reason of the fault of the appellants should defeat respondents' right to their compensation."

Under the terms of the plaintiff's contract, if irregularities in the title were reported that had the effect to render it unmerchantable, and such defects could have been cured by reasonable effort before January 15th, it was, I think, palpably the duty of the defendants to remove them; and, if the deal was not closed on account of their failure in that regard, then it seems to me that by virtue of the contract itself the plaintiff should recover. The location of the town site on this property, and the consequent dedication of the streets, constituted a defect in the title. Elliott on Roads and Streets, §§ 21 and 132; Corsica v. Zorn, 97 Tex. 317, 78 S. W. 924. The success of the entire project depended on eliminating that trouble. It could, in my opinion, have been cured before January 15, by reasonable effort on the part of the defendants.

In that event it was the duty of the defendants, under both contracts, to have used their best efforts to accomplish that end. The trade was abandoned because they failed to do so. The knowledge of the plaintiff that the town site was there is of no consequence, under my view of the law, because the point is that the defendants failed to have the dedication set aside, as they were under obligation to do. The abandonment of the trade and the failure of the plaintiff to collect his fee from the proceeds can be traced to that fact.

Under the conditions, therefore, I think the judgment should be for the plaintiff; and it is so ordered.