MERCER D. WILSON, Defendant in Error, v. CHARLES A. RAFTER, Plaintiff in Error.

St. Louis Court of Appeals, March 2, 1915.

1. REAL ESTATE BROKERS: Right to Commission: Performance of Agreed Services. A real estate broker, who had an option to purchase 35,000 acres of land, and who made an agreement with the owner whereby he was to receive a commission at a fixed price per acre for his services "in making sale of 35,000 acres, more or less," to one to whom he had assigned his option,

for all such lands as the assignee actually took and paid for, was not entitled to a commission upon a sale to such person of only 10,000 acres of the tract, since the contract contemplated a sale of the tract of land in substantially its entirety; the words "more or less" being regarded as precautionary and intended to cover a comparatively slight excess or deficiency in the approximate acreage mentioned.

2. ————: ————: ————. A real estate broker was not entitled to a commission under a contract providing for the payment of a commission upon his customer's actually taking and paying for the land, where the owner conveyed part of the tract to the customer pursuant to a contract which provided that the customer was to make a certain payment on the purchase price of the entire tract and if the title to more than ten per cent. of the entire tract should not be good, the customer could rescind the contract, reconvey the land and recover the payment made, and the customer availed himself of this right and rescinded the contract and offered to reconvey the land, upon the title to more than ten per cent. of the entire tract proving defective, since the land was not actually taken and paid for by the customer.

3. ————: ————: ————: **Special Contract.** A real estate broker who is employed under a special contract must show that he has fully complied with the terms and conditions thereof to entitle him to a commission.

Error to Cape Girardeau Court of Common Pleas. — *Hon. R. G. Ranney,* Judge.

REVERSED.

*John K. Lord, Jr.* for plaintiff in error.

(1) A plaintiff's right of recovery is determined by the condition of things at the time the suit is brought and cannot be helped out by events occurring thereafter. Tobin v. McCann, 17 Mo. App. 483; Hudson v. Burk, 48 Mo. App. 314; Werth v. City of Springfield. 22 Mo. App. 12; Lawler v. Vette, 166 Mo. App. 342. (2) An instruction in the nature of a demurrer to the evidence is sufficient to raise the point that the suit was prematurely brought. Lawler v. Vette, 166 Mo. App. 342. (3) A deed absolute on its face may be shown to

have been given merely as security. Book v. Beasly, 138 Mo. App. 455; Bobb v. Wolff, 148 Mo. App. 335; Chance v. Jennings, 159 Mo. App. 544. (4) A broker is not entitled to a commission for the sale of real estate where the owner and purchaser merely enter into a contract which is never completed and is not enforceable. Zeidler v. Walker, 41 Mo. App. 118; Condict v. Cawdery, 139 N. Y. 273; Blankenship's Admr. v. Ryerson, 50 Ala. 426; Crockett v. Grayson, 98 Va. 354; Johnson v. Sutton, 49 So. (Miss.) 970; Hyams v. Miller, 71 Ga. 618. (5) Where the broker's contract calls for the sale of a definite quantity of land and he sues on the contract he cannot recover for a sale of a less quantity. Veatch v. Norman, 109 Mo. App. 387; Cole v. Armour, 154 Mo. 333. (6) The phrase "more or less," used in connection with a description of land, covers only a reasonable excess or deficiency. Kreiter v. Bomberger, 82 Pa. 59; 5 Words and Phrases, p. 4588, 2nd paragraph; 27 Cyc. 913. (7) In a suit to recover commissions a real estate broker must show that he procured a purchaser ready, willing and financially able to make the purchase on the terms agreed on between broker and owner. Zeidler v. Walker, 41 Mo. App. 118; Hayden v. Grillo, 26 Mo. App. 293; Johnson v. Sutton, 49 So. 970. (8) A broker is not entitled to recover commissions on a sale of real estate unless he is the procuring cause of the sale. It is not sufficient that his act be merely one of a chain of causes, it must be *causa causans.* Ramsay v. West, 31 Mo. App. 676; Crain v. Miles, 154 Mo. App. 338.

*I. R. Kelso* for defendant in error.

ALLEN, J.—This is an action to recover a commission alleged to be due plaintiff upon the sale of certain lands owned or controlled by the defendant. There was a verdict and judgment for plaintiff below, and

the defendant has brought the case here by writ of error.

On November 11, 1909, defendant, a resident of the State of Georgia, entered into an agreement with plaintiff, a real estate broker residing in Cape Girardeau, Missouri, whereby, in consideration of the sum of $500 paid to him by plaintiff, he gave plaintiff an option to purchase certain timber lands in Georgia owned by him, or upon which he had options, aggregating approximately 35,000 acres. This agreement gave plaintiff the exclusive right to purchase said lands at the price of $7 per acre, the terms of sale being "one-third cash, balance in one and two years from date of deed," or all cash; deferred payments, if any, to be secured by the property. It was provided that the plaintiff would, within thirty days thereafter, deposit $5000 in a certain bank in Georgia, as earnest money, to be applied on the purchase price if the titles should be approved by plaintiff's attorneys; plaintiff to forfeit the deposit if the titles were so approved but plaintiff failed to purchase the property. The agreement further provided that if the purchase were consummated, the $500 paid for the option would be applied upon the purchase price, and that if plaintiff deposited the $5000 within the time above mentioned, he was to have a further period of sixty days in which to complete the examination of the titles and close the deal.

Plaintiff did not purchase the property under this option, but the record discloses that plaintiff "procured Messrs. Himmelberger and Harrison of the firm of Himmelberger-Harrison Lumber Company, to look at said lands;" and that on December 6, 1909, defendant, by letter, agreed with plaintiff to extend the time for making the deposit of the $5000 for a period of ten days after December 11, 1909. It appears that thereafter, to-wit, on December 19, 1909, plaintiff, with defendant's consent, assigned all of his interest in the

original contract of November 11, 1909, as extended, to "John H. Himmelberger, trustee;" and that on the last-mentioned date plaintiff and defendant entered into an agreement providing for the payment of commissions by defendant to plaintiff. This is the agreement upon which the suit is here predicated. It recites that plaintiff is "entitled to a commission of twenty-five cents an acre for bringing the Himmelberger-Harrison Lumber Company into the deal;" and then provides as follows:-

"That for and in consideration of the services rendered said Rafter by said Wilson in making sale of 35,000 acres, more or less, of timbered land located in Georgia, said Rafter agrees to pay said Wilson the sum of twenty-five cents (25c) per acre for all such lands as said Himmelberger-Harrison Lumber Company actually take over and pay for, and the same shall be paid to said Wilson by said Rafter at the same time and in the same manner as to cash and deferred securities as same is paid to said Rafter by said Himmelberger-Harrison Lumber Company."

On the same day, an agreement was entered into between the defendant and John H. Himmelberger, trustee, which recognized the right of the latter to purchase the lands under the original option contract, and contained certain other provisions which are not here material. And on December 24, 1909, defendant wrote plaintiff saying that plaintiff was "entitled to a commission on a sale to John H. Himmelberger, trustee, the same as on a sale to the Himmelberger-Harrison Lumber Company."

On February 15, 1910, a further agreement was entered into between the defendant and John H. Himmelberger, to which a certain corporation was also a party. It recited that in consideration of the sum of $5500 paid to him, and the further payment of "the notes and cash" thereinafter described, the defendant did "grant, bargain, sell, convey and confirm" unto

Himmelberger, his heirs and assigns, the property de-
scribed, which was said to amount to about 35,000
acres, subject to the conditions and provisions set
out in the contract. It was provided that the titles
were to be subject to the approval of a certain attor-
ney, one Oakes, who was to pass thereupon within a
reasonable time.

A further provision was to the effect that the de-
fendant agreed to furnish perfect abstracts to at least
ten thousand acres of the land within five days after
the execution of the agreement, and if the title thereto
was found by the above-mentioned attorney to be per-
fect, showing fee simple title in defendant, then Him-
melberger was to pay defendant the sum of $44,500 in
cash upon the delivery to him, or to a certain trust
company for him, of a general warranty deed conveying
said last-mentioned lands. The agreement then re-
cited that it was understood that Himmelberger had
paid to defendant the sum of $5500, which, with the
sum of $44,500 would make a total cash payment of
$50,000 "on the purchase price of the entire acreage"
agreed to be conveyed. It was further provided that
Himmelberger agreed to pay defendant the sum of $7
per acre for all of the timbered lands described, pro-
vided the attorney, above referred to, reported favor-
ably upon the titles; that one-third of the total pur-
chase price should be paid in cash upon the delivery
of the deeds, but that the above-mentioned sum of
$50,000 should be "treated and considered as a part
of the cash payment on the entire sales;" the remain-
der of the purchase price to be payable in one and
two years after delivery of the deeds secured by ven-
dor's lien or by mortgage upon the property.

The final provision of the contract is as follows:
"It is further understood by and between all the par-
ties herein that if the title to more than ten per cent
of the acreage of the lands herein above set out should
be defective and not approved by said Oakes for said

party of the third part (Himmelberger), then and in that event said party of the third part may, at his option rescind this entire contract and agreement to buy, and all of the provisions herein contained shall be for naught held, and the said party of the first part (defendant) promises and agrees to return and repay to the said party of the third part the said sum of $50,000 theretofore paid him as an advancement on the first ten thousand acres purchased and he further agrees that said $50,000 shall be and is declared a first lien on the 10,000 acres of land first conveyed.''

It appears that a total of $50,000 was paid defendant, and that on March 31, 1910, defendant conveyed to Himmelberger, by general warranty deed, 10,162.61 acres, in Rabun county, Georgia, for an express consideration of $50,000. The evidence further shows that on May 11, 1910, Himmelberger wrote the defendant saying that the attorney who was to pass upon the titles had reported that the titles to more than ten per cent of the acreage were defective, calling attention to the final clause of the contract of February 15, 1910, above quoted, and saying: ''We will avail ourselves of this right and hereby rescind the contract and agreement to buy the lands. . . . We stand ready and willing at any time to reconvey the 10,162.61 acres of land conveyed to us the 31st day of March, 1910, upon the payment of $50,000 and interest.''

On May 16, 1910, defendant wrote plaintiff telling him of the aforesaid letter from Himmelberger, adding: ''Therefore I expect we will have to consider negotiations with them at an end.''

On May 23, 1910, plaintiff instituted this suit. On the following day defendant and Himmelberger entered into an agreement whereby the latter agreed to reconvey to defendant the 10,162.61 acres, upon the payment to him of $5.30 for each acre thereof, and the taxes due thereon, on or before March 31, 1911;

it being provided that should defendant fail to make such payment in the time specified, Himmelberger would be under no further obligation to reconvey such lands. It appears, however, that at the time of the trial below, to-wit, August 29, 1911, no payment had been made by defendant to Himmelberger, and that the latter had not reconveyed the land, but, it is said, refused to do so.

The petition sets up, *in haec verba,* the contract between plaintiff and defendant of date December 18, 1909, averring that after the execution thereof defendant agreed to pay plaintiff commissions upon a sale to "Himmelberger, trustee." It is then alleged that defendant "caused to be conveyed" to Himmelberger 10,000 acres of the land in question, and that "the purchase price thereof was all paid in cash;" and that under the terms of the contract pleaded plaintiff became entitled to a commission of $2500 for which judgment is prayed.

The answer is a general denial.

The cause was tried by the court without the intervention of a jury, and resulted in a judgment for plaintiff for $2490.25, being twenty-five cents per acre on 9961 acres. This result was evidently reached because of the fact that of the land conveyed on March 31, 1910, a small portion was not included in the original option.

We think it quite clear that upon the foregoing facts plaintiff is not entitled to recover a commission, and that this judgment must be reversed. Plaintiff's rights in the premises are to be determined by the terms of the special contract pleaded when construed in the light of the surrounding facts and circumstances. This contract provides that in consideration of plaintiff's services, "in making sale of 35,000 acres, more or less, of timber land located in Georgia," defendant agrees to pay plaintiff twenty-five cents per acre, "for all such lands as Himmelberger-Harrison Lumber Com-

pany actually take over and pay for;" Himmelberger, trustee, being afterwards substituted in lieu of the company last above mentioned. It is manifest that this contract contemplates a sale of the subject-matter of the original option contract, in substantially its entirety, the words "more or less" in this connection being regarded as precautionary and intended to cover a comparatively slight excess or deficiency in the approximate acreage mentioned. [See 27 Cyc. 913.] Evidently the agreement sued upon contemplated the consummation of the deal then pending; and it appears that there was no thought or intention of selling a comparatively small portion of these lands, but that the intention was to allow plaintiff a commission of twenty-five cents per acre upon the land actually taken and paid for, in the event that this deal was closed.

But aside from this, it is clear that plaintiff, by the terms of the contract, was entitled to a commission only upon such lands as the prospective purchaser should "actually take over and pay for." And it does not appear that any of the property was actually taken over and paid for within the meaning of the words thus employed. It is true that Himmelberger paid $50,000, and took a warranty deed to 10,162.61 acres, but it was agreed that the $50,000 was to constitute a payment "on the purchase price of the entire acreage" agreed to be conveyed; that it was to be considered as a part of the one-third cash payment on "the entire sales." And if the purchaser exercised his right to rescind, for defective titles, then defendant was obligated to repay the $50,000 which the contract recited was paid him "as an advancement on the first 10,000 acres purchased" and which it was declared should be a first lien thereon.

The property was being sold at the price of seven dollars per acre, and it is quite clear that the $50,000 was not paid as and for the purchase price of the 10,162.61 acres, which would have been much more;

and that in no sense did the prospective purchaser "actually take over and pay for" the last-mentioned land. The warranty deed to this land operated at the time as a mortgage, whatever may now be the rights of the parties thereto, as between themselves—a matter with which we are not concerned.

Where, as here, there is a special contract, a broker must show that he has fully complied with the terms and conditions thereof before he is entitled to recover a commission. [See Dillard v. Field, 168 Mo. App. 206, 153 S. W. 532; Hughes v. Dodd, 164 Mo. App. 454, 146 S. W. 446; Jennings & Son v. Overholt, 186 Mo. App. 505, 172 S. W. 449.] This indeed is but an elementary principle of the law of contracts. In this case the evidence clearly shows that plaintiff did not become entitled to recover any commission under the explicit terms of the contract sued upon.

The judgment must therefore be reversed, without remanding the cause, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.