## O'NEIL v. O'NEIL.  (No. 10470.) *

(Court of Civil Appeals of Texas. Fort Worth. Jan. 12, 1924. Rehearing Denied Feb. 16, 1924.)

1. **Appeal and error** ⊚⟹882(14)—**Request for submission of issue estops assertion there was no evidence to support finding thereon.**

One asking for the submission of particular issues cannot claim that such submission was erroneous and that there was no evidence to support findings thereon.

2. **Brokers** ⊚⟹57(2)—**Realty broker producing buyer with whom owner negotiates sale entitled to commission on sale at reduced price.**

A real estate broker who secures a buyer satisfactory to the owner to whom the owner negotiates a sale, though at a less price and upon more favorable terms than the broker was authorized to offer, is entitled to his commission based upon the price obtained, though he is entitled to no commission on a part of the property not sold by him or to a person produced by him.

3. **Brokers** ⊚⟹49(3)—**Broker to sell whole of tract not entitled to commission for sale of part.**

A broker authorized to sell the whole of a tract cannot recover a commission upon proof that he has secured a purchaser ready, able, and willing to buy a part thereof at a stipulated price.

4. **Brokers** ⊚⟹ 57(1)—**Broker held not entitled to commission on property sold but subsequently returned pursuant to sale agreement.**

A broker authorized to sell an oil lease and contract, who produced a buyer to whom the owner negotiated a sale with the understanding that one-fourth of the property might be returned if the purchaser subsequently decided that a contemplated well thereon proved unprofitable, which privilege was exercised by the purchaser, held entitled to his commission only on the three-fourths actually sold, and was not entitled to a commission on the remaining one-fourth when subsequently sold by the owner to purchaser not produced by the broker.

5. **Pleading** ⊚⟹180(1) — **Supplemental petition may state new facts as basis for recovery.**

A supplemental petition may contain new matter and additional facts responsive to new matter contained in defendant's original answer, which new facts may be the basis of a recovery.

6. **Pleading** ⊚⟹180(2)—**That principal facts alleged in supplemental petition held not to preclude recovery.**

A broker *held* not precluded from recovering commissions in an action therefor because the major portion of the pleadings with reference thereto was contained in a supplemental petition.

Error from District Court, Wichita County; H. R. Wilson, Judge.

Action by Connor O'Neil against John O'Neil. Judgment for plaintiff, and defendant brings error. Judgment reformed, and as so reformed affirmed.

Weeks, Morrow & Francis, Carrigan, Montgomery, Britain, Morgan & King, and McDonald & Cummings, all of Wichita Falls, for plaintiff in error.

Bullington, Boone & Humphrey, of Wichita Falls, for defendant in error.

BUCK, J. Connor O'Neil sued his brother, John O'Neil, in the district court of Wichita county for certain commissions alleged to have been earned by the plaintiff in the sale of certain oil properties. · In his original petition he sued for a commission of 10 per cent. on the sale of the capital stock of the Burkburnett-O'Neil Oil Company, to the amount of $37,178, or a commission of $3,717.80. He acknowledged the receipt of $1,900 on this claim. He further claimed an agreed commission of $2,000 on the sale of the Taylor lease in the Hardin tract, Wichita county, and acknowledged payment of $1,000 on this claim. He further claimed $4,900 on the sale of what was known as the Hawkins lease, out of the Hardin tract, in the amount of $41,000, upon which he acknowledged payment of $1,500. He further claimed $10,000 commission on the sale of 2½ acres out of the northeast corner of block 74, Red River Valley lands in Wichita county. The fifth item in the petition was for $2,000 for finding a person who would drill a well on three pieces of property belonging to the defendant, to wit, Burkburnett-O'Neil Oil Company, A. B. C. Oil Company, and No. One Oil Company, located in the Akers addition to the town of Burkburnett. He claimed that he secured the Jane-Louise Oil Company to drill said well, and that the defendant agreed to pay plaintiff $2,000 out of the first production obtained from said well so drilled, and that production had been obtained and had amounted to more than $5,000, and that the $2,000 promised the plaintiff was due and unpaid. In his prayer he asked for judgment for the sum of $20,267.48.

The defendant replied, in his first amended answer, by way of a general demurrer, certain special exceptions, and further pleaded

---

a settlement with the plaintiff in full. He set out in his answer various amounts alleged to have been paid to the plaintiff, or for the plaintiff's benefit, at various times, in September, October, and November, 1918, and that on December 9th thereafter he paid the plaintiff $1,188.31 in full satisfaction of all claims and demands, which payment was accepted by plaintiff as such full satisfaction.

The plaintiff then filed what is styled his first supplemental petition, and in this he asked for $9,284.50 as commission on the Burkburnett-O'Neil Oil Company deal, and $3,255 as commission on the sale of the oil and gas lease on the Hardin tract to Mr. Slay and associates. He asked for $2,000 as commission on the sale of the 5 acres out of the Hardin tract to one Mrs. Taylor, and $4,900 on the sale of 10 acres out of the Hardin tract to Mr. Hawkins and associates. He further pleaded that defendant owed him $2,000 for securing a fifty-fifty drilling contract for the defendant from the Jane-Louise Oil Company. He further claimed $15,000 as commission on the sale to R. A. King, for the benefit of the Utah-Colorado Oil Company, of a 2½-acre fifty-fifty drilling contract, and that the defendant had received $30,000 therefrom, and that plaintiff was entitled to $15,000. He further pleaded the appropriation by defendant of certain machinery belonging to plaintiff, of the alleged value of $1,053.66, and that defendant owed him for Liberty bonds delivered to the defendant in the amount of $5,035. Other items were mentioned making a grand total of $24,502.-90, for which suit was brought.

To this answer, the defendant filed a lengthy first supplemental answer.

The cause was submitted to a jury on special issues, some 40-odd in number. In answer to these issues the jury found that no settlement had been made between the defendant and plaintiff, and that defendant had paid the plaintiff $1,188.21 on account; that the defendant had received from Hawkins and associates $5,000; that the defendant had agreed to give the plaintiff one-half of what he received, out of the fifty-fifty contract he made on the 2½ acres of land in block 74 to R. A. King for the Utah-Colorado Oil Company, and that the said company, or its successor in title, carried out its contract, and that the defendant received $28,000 therefrom; that the Utah-Colorado Oil Company, and its successor in title, the King Petroleum Company, later surrendered to the defendant one location for a well (four wells being required), and later sold the location for the fourth well to one McKinney for $10,-000. The jury further found that the defendant had received from the Jane-Louise Oil Company, from oil produced by such company under the fifty-fifty contract, the sum of $10,432.13, and that John O'Neil and the oil companies receiving the oil from the Jane-

Louise Oil Company expended for said last-named company, in drilling and equipment and operation, $20,207.81; that the defendant had used and converted machinery belonging to plaintiff of the value of $698.61.

Upon this verdict, the court entered judgment for $14,698.61, with interest from January 1, 1921, or $15,737.49 at the time of the judgment. From this judgment the defendant has appealed.

[1] The appellant attacks certain findings of the jury as being unsupported by the evidence. We have examined the testimony with reference to these issues, the answers to which are attacked, and find that the testimony is reasonably sufficient to support such answers. Moreover, during the oral argument before this court, appellee's counsel stated in the presence of appellant's counsel that the issues submitted by the court had been prepared by counsel for defendant, without any assistance or suggestion from counsel of appellee, or any change made by the court before submission. There was no denial of this by counsel for appellant. While, perhaps, counsel for appellant is not called upon to deny oral statements or charges made by appellee's counsel, yet it would seem that if the facts were different from those stated by counsel for appellee, counsel for appellant would have challenged the truth thereof. Furthermore, the defendant below objected to the submission of issues Nos. 1, 2, 4, 6, 7, 8, and 9, and no peremptory instruction was asked by plaintiff below, either as to the whole cause made by plaintiff's pleading or as to the answer of any issue. The defendant asked for the submission of the following issues, among others, to wit: Whether defendant agreed to give plaintiff one-half of what he received out of the fifty-fifty contract he made on the 2½ acres of land in block 74 to R. A. King for the Utah-Colorado Oil Company; whether said company, or its successor in title, ever carried out said contract, and how much defendant received from said contract, and how much said company, or its successor in title, paid to defendant out of the one-half or seven-sixteenths of the oil produced from the three wells on said tract in block 74. Hence the plaintiff in error, hereinafter called appellant or defendant below, is in no position to claim that there was error in submitting those issues, and is estopped from denying that there was any evidence to support the finding of the jury thereon, but probably can claim that there was not sufficient evidence to sustain the findings of the jury. See Panhandle & S. F. Ry. Co. v. Huckabee (Tex. Civ. App.) 216 S. W. 666; Poindexter v. Recvrs. Kirby Lumber Co., 101 Tex. 322, 107 S. W. 42; Lake v. Jones Lumber Co. (Tex. Civ. App.) 233 S. W. 1011; Express & Baggage Co. v. Ablon, 110 Tex. 235, 244, 218 S. W. 1030. Hence we overrule these assignments.

The judgment of the court was evidently

predicated on the finding of the jury that the defendant had received from the Utah-Colorado Oil Company, or its successor in title, $28,000, and that the defendant had used and appropriated machinery and tools of the plaintiff, valued at $698.61. Upon no other answers of the jury can the amount of the principal judgment, to wit, $14,698.61, be based. Moreover, the evidence in the record is sufficient to sustain a finding that the other items of plaintiff's claim were settled. Hence we will further discuss the judgment only so far as it pertains to these two claims.

The evidence shows that the defendant had a contract to drill four wells on the 2½ acres of land in block 74 on a fifty-fifty basis. He and W. C. Witcher, the brother-in-law of plaintiff and defendant, were out on the field and found that on the next lease to this 2½ acres the Kansas-Gulf Company was drilling a well, and that they had some salt water in the well. When defendant and Witcher got back to the office, defendant asked Witcher if the Pilgrim Oil Company, with which the defendant had made the contract, could recover damages against him if he should decline to carry out the contract. He stated that it would cost him $100,000 to drill those four wells. Witcher told the defendant that they could not recover damages if he turned the property back to the lessor immediately. Defendant stated that he believed that he would turn it back. Then Connor O'Neil, who had come into the office, told him not to turn it back, that he believed that he could sell it, and the defendant said to him:

"You go and see what you can do, and whatever you get out of that and the one in block 97, we will split fifty-fifty, but you will have to get them to drill a well in 30 days on block 97."

Connor O'Neil then went out and found R. A. King, who was wanting a fifty-fifty contract. He introduced King to the defendant, and they finally agreed on a trade, and entered into a final written contract, after at least two contracts had been entered into by King for the Utah-Colorado Oil Company and defendant, and later the said oil company defaulted or stated that they could not perform the terms thereof. The final contract provided that the Utah-Colorado Oil Company agreed to drill at least three wells on the tract, and it further agreed that if said oil company should find at a certain designated time that it was not likely to be profitable to the company to drill the fourth well, that it could return one-fourth of the lease to the defendant, and be relieved of that portion of the consideration agreed to be paid therefor. The company did exercise that option, and returned the lease to one-fourth of the tract, and later defendant made a contract with one McKinney, out of which he received $10,000. He received from the Utah-Colorado Oil Company, and its successor in title, $10,000 in cash, and a well which de-

fendant valued at $8,000, making the total of $28,000 found by the jury to have been received by the defendant. There is not controversy particularly as to the item of $698.61 for tools and machinery, and we will devote our discussion to the question of whether plaintiff is entitled to receive one-half of the $28,000, or one-half of $18,000 only, or no commission at all.

[2] There is no contention by plaintiff that he had anything to do with the sale to. McKinney. He bases his claim for the $14,000 on the contention that since he found a person who was ready, willing, and able to purchase the fifty-fifty drilling contract for an agreed consideration, that he would be entitled to. receive his full commission, in spite of the fact that the defendant, later, agreed to the forfeiture clause as to the one-fourth of the lease. He contends that, under the authorities in Texas, the rule is that where the purchaser produced is satisfactory to the seller, the broker completes his contract of employment when he produces this purchaser and puts him in touch with the would-be seller. He cites such cases as Waurika Oil Ass'n No. 1 v. Ellis (Tex. Civ. App.) 232 S. W. 364, writ of error dismissed for want of jurisdiction; Danciger v. Wood (Tex. Civ. App.) 240 S. W. 694; Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848. In the last-cited case it is held that where a real estate broker fails to procure a purchaser willing and able to buy at the price fixed, he is entitled, nevertheless, to his compensation according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale on terms satisfactory to himself, though for a less amount than that to which the broker was limited. This case does not hold, nor do we believe the rule to be, that a broker is entitled to a commission on the sale of part of the property not sold by him, nor sold by the owner to the buyer produced by him. At most, he would be entitled to a commission on the price received by the seller. We find no authority to the contrary, including the other two cases cited by appellee, and believe these cases merely hold that where a broker secures a person satisfactory to the owner, and the owner sells to such person, though at a less price or upon more favorable terms than the broker was authorized to do, that the broker is entitled to his commission, based on the price for which the property was actually sold.

[3, 4] Appellant urges that the defendant authorized the plaintiff to sell the entire property, and not a part thereof; that, since a part of the lease and contract was later returned by the purchaser to the seller, no commission is due. He cites such cases as Wilson v. Rafter, 188 Mo. App. 356, 174 S. W. 137; Boyd v. Big Three Ranch Co., 22 Cal. App. 108, 133 Pac. 623; Cone v. Keil, 18 Cal. App. 675, 124 Pac. 548—to support his con-

tention. We recognize the rule that where the owner of land authorizes a broker to, sell the whole tract, and not merely a part thereof, the broker cannot recover a commission upon proof that he secured a purchaser ready, willing, and able to buy a part of the property at the stipulated price. But we do not believe that the 'facts in this case show such a condition. The testimony of plaintiff is that defendant agreed to give him one-half of what he would receive out of the lease and contract. Defendant did sell to the buyer produced by the plaintiff the entire property, though it was later agreed that the buyer might have the privilege of returning the one-fourth thereof, and that he would thereby be relieved from any obligation as to that part. But we do not think that the plaintiff below is entitled to recover for the portion of the lease and contract sold to McKinney. It is admitted that he had nothing to do with said deal. Therefore we will reform the judgment, so as to eliminate the $5,000 which plaintiff claims he was entitled to out of said purchase price.

Appellant urges that as to the last-mentioned claim plaintiff cannot recover because the major portion of the pleadings with reference thereto is contained in a so-called supplemental petition. In the original petition, plaintiff alleged that defendant had listed with him a certain 2½-acre tract, which he had on a fifty-fifty drilling contract; that defendant agreed to pay to plaintiff one-half of what he received out of the profits derived from the sale of said contract; that plaintiff found and secured a purchaser who was ready, willing, and able to deliver to the defendant an undivided one-fourth interest in said lease, and to further carry out the terms of defendant's contract with his lessor; that said one-fourth interest was readily worth the sum of $20,000. Wherefore he prayed for a recovery of $10,000.

[5, 6] The defendant answered, as before stated, rather at length, and specially pleaded a settlement in full. In the plaintiff's supplemental petition he alleged that the defendant promised to pay him upon this item one-half of whatever the defendant obtained out of the 'fifty-fifty contract, and that the defendant had received $30,000 out of said contract; that the sale was made to R. A. King for the benefit of the Utah-Colorado Oil Company. There was no motion to strike out any part of this supplemental petition, nor any objection made to the submission of any issues to the jury based thereon. It is well settled in· this state that the supplemental petition of plaintiff in a case may contain new matter and additional facts responsive to new matter contained in defendant's original answer, and that such new facts can be the basis of a recovery. Rains v. Wheeler, 76 Tex. 390, 13 S. W. 324; Midland & N. W. Ry.

Co. v. Midland Merc. Co. (Tex. Civ. App.) 216 S. W. 627; Sovereign Camp, W. O. W. v. Hubbard (Tex. Civ. App.) 248 S. W. 732; Desdemona State Bank & Trust Co. v. Tyler (Tex. Civ. App.) 250 S. W. 742; Sparkman v. First State Bank (Tex. Civ. App.) 246 S. W. 724. Therefore the assignments directed to this point are overruled.

The judgment of the trial court is reformed by subtracting therefrom the sum of $5,000, and, as so reformed, is affirmed for $9,698.61, with interest thereon from January 1, 1921.